Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| *Ana McCarthy, et al* | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
| *vs* | ) |
|  | ) |
| *Pfizer, Inc.,* | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |

## 22 CV 09455

Case No.

RECEIVED
SDNY PRO SE OFFICE
2022 NOV -4 PM 1:52

## COMPLAINT AND REQUEST FOR INJUNCTION

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Ana McCarthy |
| Street Address | 209 Spencer Street, Apt. 2C |
| City and County | Brooklyn |
| State and Zip Code | New York 11205 |
| Telephone Number | (312) 888-1002 |
| E-mail Address | anamccarthy1@gmail.com |

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

|  |  |
|---|---|
| Name | Pfizer, Inc. |
| Street Address | 235 E. 42nd Street |
| City and County | New York - United States |
| State and Zip Code | New York 10017 |
| Telephone Number | |
| E-mail Address *(if known)* | |

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties    is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of    another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a    diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)*  Ana McCarthy                          , is a citizen of the

State of *(name)*  New York

b.    If the plaintiff is a corporation

The plaintiff, *(name)*                                          , is incorporated

under the laws of the State of *(name)*

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

and has its principal place of business in the State of *(name)*

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.      The Defendant(s)

a.      If the defendant is an individual

The defendant, *(name)*                                          , is a citizen of

the State of *(name)*                                          . Or is a citizen of

*(foreign*

*nation)*

b.      If the defendant is a corporation

The defendant, *(name)*      Pfizer, Inc.                          , is incorporated under

the laws of the State of *(name)*      New York                          , and has its

principal place of business in the State of *(name)*      New York

Or is incorporated under the laws of *(foreign nation)*

and has its principal place of business in *(name)*      New York

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.      The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

On January 1, 2022, the President of Panama issued Cabinet Decree No. 129 ("Decree 129")signed on December 29, 2021. This decree became effective on January 1, 2022. Decree 129 stated that the Emergency Use Authorization granted by Cabinet Resolution No. 11 on March 13, 2020 ("Resolution 11"), ended. Pfizer failed to recall his products in Panama. The products did not have a "Registro Sanitario" (Sanitary Registry) to be dispense. Furthermore, the Constitution of the Republic of Panama in Article 55 cites a State of Urgency and does not have a State of Emergency. The State of Urgency can't be extended for more than 10 days. Thereafter the Panamanian Congress needed to declare the Nacional State of Emergency. However, the Panamanian Supreme Court did not mention the Article 55, but says that after January 1, 2022., Pfizer, Inc., et al did not have a required Sanitary Permits to dispense the **Pfizer-BioNTech COVID-19 Vaccine** (COVID-19 Vaccine). Pfizer is presently in contempt of the Panamanian Supreme Court and has refused to recall their product. Pfizer is not the only company in contempt of the Panamanian Supreme Court, Astra Zeneca and other United States pharmaceutical companies are in contempt and in violation of the law ignoring the sovereignty of the Republic of Panama.

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought.  State how each defendant      was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights,        including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if        needed.

A.    Where did the events giving rise to your claim(s) occur?

The Panamanian Supreme Court issued the Order on August 5, 2022 and stating that as of January 1, 2022, Pfizer, Inc., et al did not have an Emergency Use Authorization. The Domesticated Judgment has jurisdiction in the United States as Pfizer, Inc., is a United States corporation based in the City of New York.

B.    What date and approximate time did the events giving rise to your claim(s) occur?

As or right now, the Panamanian Supreme Court Judgment has stated that the Emergency Use Authorization expired on January 1, 2022. However, the Panamanian Constitution on Article 55 only refers to a "state of urgency" that needed to be approved after 10 days by the Panamanian Congress. The President of Panama and his Cabinet did not have the authority under the Constitution to extend the State of "Emergency" (State of Urgency) - see attached. It is to be determined if Pfizer, Inc., et al., incurred in a violation as of March 2(4), 2020. Presently, the Panamanian Supreme Court has said that as of January 1, 2022.

C.    What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*

See attached

## IV.    Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.

*To be determined...*

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

To Grand an Injunction against Pfizer, Inc., which will mitigated damages to a (US) domestic corporation. (SEE ATTACHED)

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information,     and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause    unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable  opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the     requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case--related papers may be    served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    *Nov., 4, 2022*

Signature of Plaintiff    *Amc Gu ng*

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

Printed Name of Plaintiff

**B.**     **For Attorneys**

Date of signing:     November 4th, 2022

Signature of Attorney

Printed Name of Attorney     Ana McCarthy

Bar Number     Pro-Se

Name of Law Firm     Pro-Se

Street Address     209 Spencer Street Apt. 2C

State and Zip Code     Brooklyn 11205

Telephone Number     (312) 888-1002

E-mail Address     anamccarthy1@gmail.com

I, Ana McCarthy, with a personal identification 4-260-43 hereto attest that I'm a Public Interpreter for the Republic of Panama and licensed registered at the Panamanian Ministry of Foreign Affairs and the Panamanian Ministry of Education, to certify and attest the validity of the documents hereto attached and signed in the Republic of Panama (Under license the Minister of Foreign Relations Under Convention de la Haye du 5 octobre 1961). This is a certified, true, and correct translation of the original documented affidavit hereto attached and signed by Ana McCarthy and without prejudice.

Brooklyn, October 31, 2022.

Ana McCarthy

(312) 888-1002

TRANSLATION
REPUBLIC OF PANAMA

MINISTER OF EDUCATION  (sealed)

RESOLUTION No. TP-56                     Panama, 27 of April, 1999

"Hereto you are granted authorization as Public Translator"

That attorney JORGE ALBERTO BARLETTA ARCIA, male, Panamanian, of legal age and personal id N.. 8-212-1418, with offices in the Via Ricardo J. Alfaro, building Sun Tower Mall N. 200, place where he receives personal notification and judicial, and in use of his duties and Special Power of Attorney given by Mrs. ANA TERESA LOPEZ DE McCARTHY, female, Panamanian, of legal age, with personal identification number 4-20-43, hereto request the Minister of Education grants the License as PUBLIC TRANSLATOR of the languages SPANISH and ENGLISH and vice versa.

Hereto with this petition the following documents

    a.  Power of Attorney given by the petitioner

    b.  Birth Certificate as proof the petitioner is Panamanian

    c.  Certifications attesting that the examiners, professors, Inelda C. Howard and Guillermo F. Walters, accredited the credentials of the petitioner to obtain the License as PUBLIC TRANSLATOR of the SPANISH to ENGLISH and vice versa.

    c.  Certifications subscribe that the Licensees Guillermo LeBlanc, Alderman of the Police for the Ancon District and Elena Jaen de Herrera, Secretary of the 7th Judicial District of the Penal District Court the 1st Circuit Judicial of Panama, are hereto accredited the good conduct of the petitioner.

    e.  Copy of ID

    f.  Police Background Check.

g. Curriculum Vitae

Given the petitioner has all the requirements demanded by the Law Articles 2140, 2141, and 2142 of the Administrative Code of the Republic of Panama, reformed by Law No. 59 of July 31, 1998, hereto it is conferred the petition.

Therefore,

## THE MINISTER OF EDUCATION

### In use of their legal faculties,

### RESUELVE:

**AUTORIZATION to ANA TERESA LOPEZ DE McCARTHY, female, Panamanian, of legal age, with personal identification 4-260-43, as OFFICIAL PUBLIC TRANSLATOR of the SPANISH to ENGLISH and vice versa.**

## TO BE NOTIFIED AND PUBLISH IN THE  LAW BULLETIN

### SIGNED (**PABLO ANTONIO THALASINOS**)

The Vice Minister of Education
verified sealed June 4, 2018

Stamped that the subscribed hereto secretary General of the Minister of Education hereto **ATTEST** that this document is an original copy that is in the archives of this institution. Signed and initial SecG/cefc.

Signed Hector Peñalba
Stamped . Original Copy  signed by Maribel Chan P. Secretary General of the Minister of Education Panama.



**REPÚBLICA DE PANAMÁ**
**MINISTERIO DE EDUCACIÓN**

Resuelto No. TP-56          Panamá, 27 de abril de 1999

"*Por medio del cual se le confiere autorización como Traductor Público*"

Que el Licenciado **JORGE ALBERTO BARLETTA ARCIA**, *varón, panameño, mayor de edad, con cédula de identidad personal No. 8-212-1418, con oficinas en la Vía Ricardo J. Alfaro, Edificio Plaza Sun Tower Mall No. 20, lugar donde recibe notificaciones personales y judiciales, en ejercicio del Poder Especial conferido por la Señora ANA TERESA LÓPEZ DE McCARTHY, mujer, panameña, mayor de edad, con cédula de identidad personal No. 4-260-43, solicita al Ministerio de Educación, se le confiera Licencia de TRADUCTOR PUBLICO del idioma ESPAÑOL al INGLES y viceversa.*

Con esta solicitud se acompañan los siguientes documentos:

a.   *Poder debidamente otorgado por la peticionaria.*

b.   *Certificado de nacimiento donde consta que la peticionaria es panameña.*

c.   *Certificaciones suscritas por los profesores examinadores, Inelda C. Howard y Guillermo F. Walters, por medio de las cuales se acredita la idoneidad de la peticionaria para obtener la Licencia de TRADUCTOR PUBLICO en los idiomas Español al Inglés y viceversa.*

ch.  *Certificaciones suscritas por los Licenciados Guillermo Leblanc, Corregidor de Policía del Corregimiento de Ancón y Elena Jaén de Herrera, Secretaria del Juzgado Séptimo de Circuito de lo penal del Primer Circuito Judicial de Panamá, acreditando la buena conducta de la solicitante.*

d.   *Copia de Cédula.*

e.   *Récord Policivo.*



f.      *Curriculum Vitae.*

    *Como la peticionaria reúne los requisitos exigidos por los artículos 2140, 2141 y 2142 del Código Administrativo, reformados mediante Ley No. 59 de 31 de julio de 1998, se accede a lo pedido.*

    *Por tanto,*

### EL MINISTRO DE EDUCACIÓN
*en uso de sus facultades legales,*

### R E S U E L V E :

    *AUTORIZAR a* ANA TERESA LÓPEZ DE McCARTHY, *mujer, panameña, mayor de edad, con cédula de identidad personal No. 4-260-43, como* TRADUCTOR PUBLICO *del idioma* ESPAÑOL *al* INGLES *y viceversa.*

## NOTIFÍQUESE Y PUBLÍQUESE,

PABLO ANTONIO THALASSINOS

El Viceministro de Educación,

HECTOR PEÑALBA

VERIFICADO
4-6-18
fecha

LA SUSCRITA SECRETARIA GENERAL DEL
MINISTERIO DE EDUCACIÓN
**CERTIFICA**
QUE ESTE DOCUMENTO ES COPIA DE LA COPIA QUE
REPOSA EN LOS ARCHIVOS DE LA INSTITUCIÓN

SecG/cefc.

FIRMA

ES COPIA AUTENTICA

Secretaria General del Ministerio de Educación

PANAMÁ. ———————— DB 19——

## EMERGENCY MOTION FOR THE
## DOMESTICATION OF A FOREIGN STAY OF EXECUTION AND JUDGMENT.
## SHOW CONTEMPT OF AN ORDER BY THE PANAMANIAN SUPREME COURT.
## ESTABLISH JURISDICTION REQUEST ATTORNEYS FEES AND EXPENSES

1. On July 8 2022, the Supreme Court of the Republic of Panama received a complaint from a Panamanian licensed attorney and former adviser to  the Minister of Health of the Republic of Panama. Magister Jeacqueline Probst, Esq., in use of her faculties as a licensed attorney for the Republic of Panama, filed a lawsuit challenging the constitutionality of an Executive Order from the Republic of Panama. **Executive Order No. 99 of the February 15, 2021.** (Attached - copies and translations). Executive Order No. 99 preamble, translated, states that it "accepts the recommendations of the World Health Organization (WHO) for vaccines against the SAR-CoV-2, […] and the use in the whole national territory, […]" The reason for the challenge of the **Executive Order, No. 99, of February 15, 2021** is that according to the laws of the Republic of Panama, Executive Order No. 99 only had validity for 180 days.

2. However, on December 29, 2021, Panamanian President, Laurentino Cortizo and his Cabinet, signed **Cabinet Resolution No. 129 of December 29, 2021**. Although, Cabinet Resolution No. 129 was late on arrival by ninety days (90), Cabinet Resolution No. 129 declared an end to the National State of Emergency in the Republic of Panama, granted under **Cabinet Resolution No. 11. Cabinet Resolution No. 11** established the National State of Emergency in March 2020. Therefore the State of Emergency had concluded.

3. On August 5, 2022, the "El Pleno" of the Panamanian Supreme Court, issued a "Fallo" or "Oder" with a majority rule ("Pleno"), signed by eight Justices:
   - **(I)   Justice Maribel Cornejo Batista**
   - **(II)  Justice María Eugenia Lopez Arias,**
   - **(III) Justice Angela Russo de Cedeño,**
   - **(IV) Justice Jose E. Ayú Prado Canals,**
   - **(V)  Justice Cecilio Cedalise Riquelme,**
   - **(VI)  Justice Maria Cristina Chen Stanziola**
   - **(VII) Justice Miriam Cheng Rosas**

     (VIII) Olmedo Arrocha Osorio (dissent)

4. The Order highlighted that the issued of constitutionality in the lawsuit by Mgtr. Jacqueline Probst was invalid because the Emergency Use Authorization had ended months prior with the Cabinet Resolution No. 129. In simple terms, the Panamanian Supreme Court granted a Stay of Execution on all COVID-19 vaccines. This vaccines do not have an approval to be

dispensed in the Republic of Panama and lacked the trials to be approved for dispensation in the Republic of Panama. S

5. This is put in simple terms as it seems to be something loss in translation and Pfizer seems to be ignoring the Order of the Supreme Court for them to recall their product in the Republic of Panama. If the United States Justices of the Supreme Court were to issued an order for a Panamanian product to be recalled, the Order would be executed ad hoc. Such is not the case in the Republic of Panama. On January 2021, a plaintiff filed a complaint in the United States District Court for the Northern District of Texas - Fort Worth Division. The case, captioned No. 4:21-cv-1058-P, is against a United States FDA or Food and Drug Administration, the Orders cited that *"This case involves the Freedom of Information Act ("FOIA"). Specifically, at issue is Plaintiff's FOIA request seeking "[a]ll data and information for the Pfizer Vaccine enumerated in 21 C.F.R. § 601.51(e) with the exception of publicly available reports on the Vaccine Adverse Events Reporting System" from the Food and Drug Administration ("FDA"). See ECF No. 1. As has become standard, the Parties failed to agree to a mutually acceptable production schedule; instead, they submitted dueling production schedules for this Court's consideration. Accordingly, the Court held a conference with the Parties to determine an appropriate production schedule."*

6. This order includes documents from Pfizer-BioNTech COVID-19 Vaccine in the Republic of Panama. FDA has failed to produce Pfizer documents for the Republic of Panama. The Republic of Panama does not have a functional Vaccine Adverse Effect Reporting System. The Panamanian Congress audited the Republic of Panama in search of a Vaccine Injury Compensation Program and a COVID-19 Vaccine Injury Compensation Program. The Panamanian Congress did not find any funds to compensation the vaccine injures in the Republic of Panama. One of the parties that assisted in this motion is (frm) Congress Lady Jessica Indira Ledezma Morales, the mother of patient injured by a vaccine administered in the Republic of Panama. The United States has not provided any information as to where the VICP or CICP has been allocated for the Republic of Panama or how to file claims.

7. For the lay and the sake of geographical clarification, the Republic of Panama is a tiny sovereign nation located in the American Continent and specifically in Central America.

8. The Republic of Panama is not an incorporated territory nor a protectorate of any nation nor of the United States. Panama has a system of government composed by three branches: Executive, Legislative, and Judicial. The Judicial power rests with a Supreme Court and nine justices, magister members, appointed by the president with the approval of the Panamanian Congress.

9. Having established that Panama is a sovereign nation, with a branches of government, Pfizer, a United States corporation based in New York is in **Contempt of the Order** issued by the eight Justices of the Panamanian Supreme Court. Pfizer is in blatant disregard of the laws of a sovereign nation.

THEREFORE, according to the United States Department of State, the general principle of international law applicable in such cases is that a foreign state exercises the right to examine foreign judgments for four causes:
(1) to determine if the court that issued the judgment had jurisdiction;
(2) to determine whether the defendant was properly notified of the action;
(3) to determine if the proceedings were vitiated by fraud; and
(4) to establish that the judgment is not contrary to the public policy of the foreign country.

The Supreme Court of the Republic of Panama issued an Order on August 5, 2022. The Judgment has the jurisdiction  and the power to be enforced in the Republic of Panama. The Panamanian government and authorities have been notified and the proceedings were transparent and the Judgment Order was issued by eight of the Magistrates of the Panamanian Supreme Court, based on the public policy of the Republic of Panama, and a Cabinet Resolution signed by the Panamanian President.

The problem is that while the Panamanian Supreme Court issued a "Stay of Execution" on vaccinations in the territory of the Republic of Panama, Pfizer's vaccines have not been recalled in the Republic of Panama. Vaccination of the Pfizer vaccine has not stopped. On Tuesday, October 25, 2022, Pfizer was notified via CT Corporation, a Wolters Kluwer Company, and the Register Agent for service by Pfizer. Although, a courtesy copy of the Panamanian Supreme Court Order was served to the Corporate Offices of Pfizer, Pfizer has refused the courtesy copy, but acknowledged it was a "lawsuit", and their staff requested service to be directed to CT Corporation, their registered agent. A copy of service is hereto attached.

The State of New York have various rules,  procedures and documentary requirements for foreign judgments. In the State of New York, the world capital of commerce a foreign judgment of a (New York) domestic corporation has jurisdiction in the State of New York and falls under the Jurisdiction of the State of New York

THEREFORE, I hereto request for this Court to Domesticate a Foreign Judgment by the Supreme Court of the Republic of Panama, a sovereign nation.

THAT Pfizer, with addressed at 245 E. 42nd Street, New York, NY 10017, and phone number (212) 733-2323, is a local corporation, presently in Contempt of the Supreme Court Order, Executive Order,s and the laws of a sovereign nation. This actions could affect our foreign relations as it violates the international laws. Pfizer is a Corporation,  based in the City of New York and within the Jurisdiction of the State of New York.

In consideration, I hereto request permission for this motion to be amended.

November 1, 2022

Ana McCarthy
Brooklyn, NY
Pro se & Licensed Legal Interpreter
Under Du Hague (See attached)
(312) 888-1002

No. 28979-B                           Gaceta Oficial Digital, viernes 13 de marzo de 2020                                    1

# República de Panamá

## CONSEJO DE GABINETE

### RESOLUCIÓN DE GABINETE N.º11
### de 13 de marzo de 2020

#### Que declara el Estado de Emergencia Nacional y dicta otras disposiciones

#### EL CONSEJO DE GABINETE,
en uso de sus facultades constitucionales y legales,

#### CONSIDERANDO:

Que en virtud de que en los últimos días, se han registrado varios casos de CoViD-19, enfermedad infecciosa causada por el coronavirus, afectando a la población en general;

Que esta enfermedad infecciosa CoViD-19, causada por el coronavirus, puede incrementarse, amenazando tanto a los nacionales como a los extranjeros que se encuentren en el territorio de la República, así como a la economía nacional, generando alteraciones e interrupciones de las condiciones normales de funcionamiento u operación de las entidades del Estado, a causa de los eventos previamente descritos;

Que de acuerdo al artículo 79 del Texto Único de la Ley 22 de 2006, que regula la contratación pública, ordenado por la Ley 61 de 2017, es competencia del Consejo de Gabinete declarar emergencia, para los efectos que las entidades estatales puedan adquirir bienes, servicios u obras a través de un procedimiento especial;

Que la mencionada norma de la Ley de contrataciones públicas, exige que se establezca una suma total autorizada para las contrataciones especiales y el período dentro del cual estas contrataciones pueden realizarse;

Que se requiere tomar las providencias, a fin de suministrar los fondos y recursos necesarios, para afrontar y atenuar los efectos de esta pandemia declarada por la Organización Mundial de la Salud,

#### RESUELVE:

**Artículo 1.** Declarar el Estado de Emergencia Nacional, como consecuencia de los efectos generados por la enfermedad infecciosa CoViD-19, causada por el coronavirus, y la inminencia de la ocurrencia de nuevos daños, producto de las actuales condiciones de esta pandemia.

**Artículo 2.** Autorizar la contratación mediante el procedimiento especial de adquisiciones para la ejecución de las obras y adquisición de bienes y/o servicios que se requieran, a efectos de conjurar situaciones relacionadas con el Estado de Emergencia Nacional, declarado en el artículo 1 de la presente Resolución de Gabinete.

**Artículo 3.** Establecer que la suma total autorizada para las contrataciones especiales sea de cincuenta millones de balboas con 00/100 (B/.50,000,000.00), y que el período dentro del cual se puedan realizar, será de ciento ochenta (180) días calendario.

**Artículo 4.** Le corresponde al Ministerio de la Presidencia, administrar y autorizar los recursos, las partidas asignadas y los traslados de las mismas, de conformidad con la Ley que dicta el Presupuesto General del Estado, mientras dure el Estado de Emergencia Nacional de que trata la presente resolución.

**Artículo 5.** Autorizar al ministro de Economía y Finanzas, para que, en caso de ser requerido, solicite la dispensa ante la Asamblea Nacional, para la suspensión temporal de los límites financieros de que trata la Ley 34 de 2008, modificada por la Ley 102 de 2019.

**Artículo 6.** Autorizar al Ministerio de Gobierno, por conducto del Sistema Nacional de Protección Civil (SINAPROC), al Ministerio de Seguridad Pública y a los estamentos de seguridad correspondientes, para que coordinen todo lo relacionado con la aceptación y recibo de las contribuciones que efectúen organismos humanitarios nacionales e internacionales, que expresen su deseo de contribuir a la solución de los problemas que se confronten producto de la enfermedad infecciosa CoViD-19, causada por el coronavirus.

**Artículo 7.** Esta Resolución de Gabinete empezará a regir a partir de su aprobación.

**Fundamento de Derecho:** Constitución Política de la República de Panamá; Texto Único de la Ley 22 de 2006, que regula la contratación pública, ordenado por la Ley 61 de 2017; Ley 34 de 2008, modificada por la Ley 102 de 2019.

## COMUNÍQUESE Y CÚMPLASE.

Dada en la ciudad de Panamá, a los trece (13) días, del mes de marzo de dos mil veinte (2020).

No. 28979-B                                   Gaceta Oficial Digital, viernes 13 de marzo de 2020                                   3

**LAURENTINO CORTIZO COHEN**
Presidente de la República

La ministra de Gobierno,

**JANAINA TEWANEY MENCOMO**

La ministra de Educación,

**MARUJA GORDAY DE VILLALOBOS**

La ministra de Salud,

**ROSARIO TURNER MONTENEGRO**

El ministro de Comercio e Industrias,

**RAMÓN MARTÍNEZ**

El ministro de Desarrollo Agropecuario,

**AUGUSTO VALDERRAMA**

El ministro de Economía y Finanzas,

**HÉCTOR E. ALEXANDER H.**

El ministro para Asuntos del Canal,

**ARISTIDES ROYO**

El ministro de Relaciones Exteriores,

**ALEJANDRO FERRER**

Gaceta Oficial Digital, viernes 13 de marzo de 2020

El ministro de Obras Públicas,

**RAFAEL SABONGE VILAR**

La ministra de Trabajo y
Desarrollo Laboral,

**DORIS ZAPATA A.**

La ministra de Vivienda y
Ordenamiento Territorial,

**INÉS SAMUDIO DE GRACIA**

La ministra de Desarrollo Social,

**MARKOVA CONCENCIÓN**

El ministro de Seguridad Pública,

**JUAN MANUEL PINO F.**

El ministro de Ambiente,

**MILCIADES CONCEPCIÓN**

El ministro de Cultura,

**CARLOS AGUILAR NAVARRO**

**JOSÉ GABRIEL CARRIZO JAÉN**
ministro de la Presidencia y
secretario general del Consejo de Gabinete,

# Republic of Panama

## CABINET COUNCIL

## CABINET RESOLUTION #11

### of March 13th, 2020.

### That declares National Emergency State and dictates other provisions.

#### THE CABINET COUNCIL,

In exercise of its constitutional and legal powers.

#### CONSIDERING:

That by virtue of the fact that in the last days, there have been registered several cases of CoViD-19, infectious disease caused by the coronavirus, affecting the general population;

That this infectious disease CoViD-19, caused by the coronavirus, it may increase, threatening both nationals and foreigners who are in the territory of the Republic, as well as the national economy, generating alterations and interruptions of the normal conditions of the operation of the entities of the State, because of previously described events;

That according to article 79 of the Single Text of Law 22 of 2006, which regulates public procurement, ordered by Law 61 of 2017, it is the competence of the Cabinet Council to declare an emergency, for the purposes that state entities can acquire goods, services or public works through a special procedure;

That the aforementioned norm of the Law of Public Procurement, requires that a total amount authorized for special contracts be established and the period within which these contracts can be carried out;

That it is necessary to take the necessary measures, in order to provide the necessary funds and resources, to face and mitigate the effects of this pandemic declared by the World Health Organization.

#### DECIDES:

**Article 1:** Declare the State of National Emergency, as a result of the effects generated by the infectious disease CoViD-19 caused by the coronavirus, and the imminence of the occurrence of new damages, product of the current conditions of this pandemic.

**Article 2:** Authorize contracting through the special procurement procedure for the execution of works and acquisitions of goods and / or services that are required, authorize contracting through the special procurement procedure for the execution of works and acquisitions of goods and / or services that are required, in order to avert situations related to the State of National Emergency, declared in Article 1 of this Cabinet Resolution.

**Article 3:** Establish the total amount authorized for special contracts is fifty millions of balboas with 00/100 (B/. 50,000,000.00), and that the period within which they can be carried out will be one hundred and eighty (180) calendar days.

**Article 4:** It corresponds to the Ministry of the Presidency, to administer and authorize the resources, the assigned items and the transfers thereof, in accordance with the Law that dictates the General State Budget, for the duration of the State of National Emergency referred to in this resolution.

No. 28979-B                    Official Digital Gazette, Friday, March 13th, 2020.

# LAURENTINO CORTIZO COHEN

President of the Republic

The Minister of Government,

JANAINA TEWANEY MENCOMO

The Minister of Education,

MARUJA GORDAY DE VILLALOBOS

The Minister of Health,

ROSARIO TURNER MONTENEGRO

The Minister of Agriculture Development,

AUGUSTO VALDERRAMA

The Minister of Economy and Finance,

HÉCTOR E. ALEXANDER H.

The Minister for Canal Affairs,

ARISTIDES ROYO

The Minister of Foreign Affairs,

ALEJANDRO FERRER

**REPÚBLICA DE PANAMÁ**
**MINISTERIO DE SALUD**



**DECRETO EJECUTIVO No. 99**
De 15 de Febrero de 2021

Que acoge las recomendaciones de la Organización Mundial de la Salud (OMS) para las vacunas contra el SARS-CoV-2, como mecanismo para facilitar la disponibilidad y el uso en todo el territorio nacional, por razón de la emergencia sanitaria.

**EL PRESIDENTE DE LA REPÚBLICA**
en uso de sus facultades constitucionales y legales,

**CONSIDERANDO:**

Que el artículo 109 de la Constitución Política de la República, establece que es función esencial del Estado velar por la salud de la población de la República, y que el individuo, como parte de la comunidad, tiene derecho a la promoción, protección, conservación, restitución y rehabilitación de la salud y la obligación de conservarla, entendida ésta como el completo bienestar físico, mental y social;

Que la Ley 66 de 10 de noviembre de 1947, que aprueba el Código Sanitario de la República de Panamá, señala que le corresponde al Ministerio de Salud tomar las medidas necesarias para hacer desaparecer toda causa de enfermedad transmisible o mortalidad especial, así como el control de todo factor insalubre de importancia local o nacional y que sus normas se aplicarán de preferencia a toda otra disposición legal en materia de salud pública, y obliga a las personas, naturales o jurídicas, y entidades oficiales o privadas, nacionales o extranjeras, existentes o que en el futuro existan, transitoria o permanentemente, en el territorio de la República;

Que el artículo 153 del precitado cuerpo legal, señala que con relación a la profilaxis de las enfermedades transmisibles no mencionadas particularmente en este código, se seguirán las normas previstas por la Organización Panamericana de la Salud, y que estas normas se incluirán en los respectivos reglamentos que dictará el Órgano Ejecutivo;

Que el artículo 79 la Ley 1 de 10 de enero de 2001, "Sobre Medicamentos y otros Productos para la Salud Humana", establece que el Órgano Ejecutivo, en caso de emergencia sanitaria y mientras dure la contingencia, podrá importar medicamentos, productos semiterminados y materias primas, a fin de garantizar su disponibilidad y salvaguardar la salud de la población;

Que desde el 11 de diciembre de 2020, la Administración de Alimentos y Medicamentos de los Estados Unidos de América, conocida por sus siglas en inglés como FDA, emitió la primera autorización de uso de emergencia (AUE) para una vacuna para la prevención de la enfermedad por coronavirus 2019 (COVID-19) causada por el síndrome respiratorio agudo severo coronavirus 2 (SARS-CoV-2), el cual se constituye como un mecanismo para facilitar la disponibilidad y el uso de las vacunas, durante la emergencia de salud pública;

Que por su parte, en el mes de enero de 2021, la Agencia Europea de Medicamentos, conocida por su siglas en inglés como EMA, otorgó una autorización de comercialización condicional para la vacuna COVID-19 para prevenir la enfermedad por coronavirus 2019 (COVID-19);

Que en comunicado de prensa del 31 de diciembre de 2020, la Organización Mundial de la Salud (OMS) señaló que había incluido en su lista de autorización de uso en emergencia, la vacuna contra la COVID-19, lo cual facilita a que los países aceleren sus propios procesos de aprobación reglamentaria para importar y administrar la vacuna;

No. 29219-B                          Gaceta Oficial Digital, lunes 15 de febrero de 2021                          3

Que en el documento ISBN deHSS/MT/COVID-19/20-0006, de 27 de abril de 2020, denominado "Utilización de decisiones de otras autoridades regulatorias para autorizar el uso de emergencia de medicamentos y otras tecnologías sanitarias en una pandemia (por ejemplo, COVID-19)", emitido por la OMS/OPS, se señala que *"Aunque no es una autoridad regulatoria, la OPS/OMS recomienda que las ARN consideren a la OMS como una autoridad confiable o de referencia a efectos de la utilización de las decisiones de autoridades regulatorias de otras jurisdicciones en lo que se refiere a productos precalificados o incluidos en la lista para uso de emergencia"*;

Que la Ley 1 de 10 de enero de 2001, según quedó modificada por la Ley 97 de 4 octubre de 2019, establece que la Autoridad de Salud, a través de la Dirección Nacional de Farmacia y Drogas, previa solicitud fundamentada técnicamente por la entidad de salud pública o privada requirente, podrá autorizar la importación de productos farmacéuticos y materias primas necesarias para la fabricación y comercialización de medicamentos sin el respectivo Registro Sanitario, para atender las urgencias que se presenten por efectos de calamidades públicas y desastres naturales;

Que la Ley 109 de 12 de noviembre de 2019, que adopta la Política Nacional de Medicamentos en la República de Panamá, señala en el numeral 3 de su artículo 2, que los medicamentos son bienes sociales esenciales para la recuperación y mantenimiento de la salud, y para la prevención de enfermedades;

Que mediante el Decreto de Gabinete No. 1 de 15 de enero de 1969, se creó el Ministerio de Salud para la ejecución de las acciones de promoción, protección, reparación y rehabilitación de la salud que, por mandato constitucional, son responsabilidad del Estado; el cual, como órgano de la función ejecutiva, tiene a su cargo la determinación y conducción de la política de salud del gobierno en el país y está constituido, entre otros, por la Asesoría Técnica Internacional de la OPS/OMS;

Que mediante el Decreto Ejecutivo No. 64 de 28 de enero de 2020, el Órgano Ejecutivo, por intermedio del Ministerio de Salud, dispuso la adopción de las medidas necesarias, que sean imprescindibles e impostergables, ante la amenaza causada por el brote del nuevo coronavirus (2019-nCoV), así como aquellas de carácter extraordinario requeridas para evitar la introducción y propagación de este problema de salud pública a nivel mundial;

Que el 11 de marzo 2020 la Organización Mundial de la Salud (OMS) elevó la situación de emergencia de salud pública ocasionada por la COVID-19 a pandemia internacional y, en consecuencia, agencias reguladoras como la Administración de Alimentos y Medicamentos de los Estados Unidos de América (FDA) y la Agencia Europea de Medicamentos (EMA), entre otras, han adoptado medidas regulatorias que contemplan autorizaciones de uso de emergencia provisional y condicionada para medicamentos, fijando estándares internacionales especiales para estas aprobaciones;

Que a través de la Resolución de Gabinete No. 11 de 13 de marzo 2020, se declaró el Estado de Emergencia Nacional y se dictaron otras disposiciones, en virtud de la declaratoria de Pandemia de la enfermedad de la COVID-19, por parte de la Organización Mundial de la Salud;

Que debido a la alta demanda existente a nivel mundial sobre las vacunas para la prevención de la COVID-19 y la necesidad inminente de nuestro país de adquirirlas, es necesario permitir el acceso a las mismas, sin perjuicio del estricto cumplimiento de la presentación de documentos requeridos por la Autoridad Sanitaria para así proceder a la Autorización de Uso de Emergencia de tales vacunas;

Que es deber y responsabilidad de las autoridades de salud velar por el fiel cumplimiento de todas las normas sanitarias vigentes, y en esta ocasión se estima conveniente acoger las recomendaciones de la OMS, entre las cuales se encuentra la de validar las Autorizaciones de Uso de Emergencia de las vacunas contra la COVID-19,

**DECRETA:**

**Artículo 1.** Acoger las recomendaciones de la Organización Mundial de la Salud (OMS) en relación con la validación de Autorización de Uso de Emergencia para las vacunas contra el SARS-CoV-2, como mecanismo para facilitar la disponibilidad y el uso en todo el territorio nacional, por las instituciones públicas de salud. Esta autorización no representa un Registro Sanitario.

**Artículo 2.** Autorizar, por razón de la emergencia sanitaria y mientras dure la Emergencia Nacional declarada por la pandemia ocasionada por la COVID-19, la importación de las vacunas contra el SARS-CoV-2, que requieran las instituciones públicas, a fin de garantizar su disponibilidad y salvaguardar la salud de la población, de conformidad con lo dispuesto en el artículo 79 de la Ley 1 de 2001.

Los requisitos para la autorización de importación de las vacunas contra el SARS-CoV-2, serán establecidos mediante resolución por la Dirección Nacional de Farmacia y Drogas del Ministerio de Salud, de conformidad con lo dispuesto en la Ley 1 de 10 de enero de 2001.

**Artículo 3.** Corresponderá a la Dirección Nacional de Farmacia y Drogas del Ministerio de Salud, emitir, como medida extraordinaria, la Autorización de Uso de Emergencia que permita el uso provisional y condicionado de las vacunas contra el SARS-CoV-2, según sea solicitada por las casas farmacéuticas para uso de las instituciones públicas.

La Dirección Nacional de Farmacia y Drogas del Ministerio de Salud establecerá mediante resolución, el procedimiento para la emisión de la Autorización de Uso de Emergencia.

**Artículo 4.** Recomendar a los profesionales de salud, extremar la precaución y la vigilancia de la posible aparición de reacciones no esperadas en las personas que se les aplique estas vacunas, advirtiendo a ellos y a sus familiares que consulten con su médico, ante cualquier signo que sugiera un cambio de comportamiento.

**Artículo 5.** Este Decreto Ejecutivo deroga la Resolución No. 002 de 7 de enero de 2021.

**Artículo 6.** Las disposiciones establecidas mediante el presente Decreto Ejecutivo únicamente tendrán efecto mientras subsista la Declaración de Emergencia Nacional.

**Artículo 7.** El presente Decreto empezará a regir a partir de su promulgación.

**FUNDAMENTO DE DERECHO:** Constitución Política de la República; Ley 66 de 10 de noviembre de 1947, Ley 1 de 10 de enero de 2001, Ley 109 de 12 de noviembre de 2019; Decreto Ejecutivo No. 64 de 28 de enero de 2020 y Resolución de Gabinete No. 11 de 13 de marzo de 2020.

**COMUNÍQUESE Y CÚMPLASE.**

Dado en la ciudad de Panamá, a los  *15*  días del mes de *Febrero* de dos mil veintiuno (2021).


**LAURENTINO CORTIZO COHEN**
Presidente de la República


**LUIS FRANCISCO SUCRE M.**
Ministro de Salud

No. 29219-B                              Gaceta oficial Digital, Monday, February 15, 2021

**REPUBLIC OF PANAMA**
**MINISTRY OF HEALTH**
**EXECUTIVE ORDER NO. 99 (handwritten)**
**On the 15th of February, 2021**

Which brings together the recommendations of the World Health Organization (WHO) for vaccines against the SAR-CoV-2, as a mechanism for facilitating the availability and the use in the whole national territory, due to the health emergency.

**The President of the Republic**
In use of his constitutional and legal authorities

**Whereas:**

That Article 109 of the Political Constitution of the Republic establishes that it is an essential function of the State to safeguard the health of the citizenry of the Republic, and that the individual, as a part of the community, has the right to the promotion, protection, preservation, restitution and recovery of health and the obligation to preserve it, it being understood as complete physical, mental, and social well-being;

That the Law 66 of the 10th of November, 1947, which enacts the Health Code of the Republic of Panama indicates that it corresponds to the Ministry of Health to take the necessary measures to eliminate any cause of transmissible disease or special mortality, as well as the control of any unhealthy factor of local or national importance, and that its norms will be applied preferentially to all other legal dispositions in matters related to public health, it obliges persons, be they natural or juridical, and official or private entities, national or foreign, extant or which may exist in the future, transitionally or permanently in the territory of the Republic;

That Article 153 of the former legal text indicates that with relation to the prophylaxis/prevention of transmissible diseases not specifically mentioned in this code, the norms established by the Pan-American Health Organization will be followed, and that these norms will be included in the respective regulations that the Executive Branch will enact;

That Article 79 of Ley 1 of January 10, 2001, "On Medicines and other Products for Human Health", establishes that the Executive Branch, in the case of a health emergency and for as long as the contingency lasts, may import medicines, semi-finished products, and raw materials with the goal of guaranteeing its availability and to safeguard the citizenry's health;

That since the 11th of September of 2020, the Food and Drug Administration of the United States of America, known by its initials in English as the FDA, issued the first emergency use authorization (EUA) for a vaccine for the prevention of the 2019 coronavirus disease (COVID-19) caused by the acute severe respiratory syndrome (SARS-CoV-2), which consists of a mechanism for facilitating the availability and use of the vaccines during the public health emergency;
That, on its part, in the month of January, 2021, the European Medicines Agency, known by its initials in English as EMA, granted conditional authorization for the commercialization for the COVID-19 vaccine for preventing the 2019 coronavirus disease (COVID-19);

That in a press communiqué on the 31st of December, 2020, the World Health Organization (WHO) indicated that it had included in its list of emergency use authorization, the vaccine against COVID-19, which helps countries to accelerate their own regulatory approval processes in order to import and administer the vaccines; (initials by President Nito Cortizo)

That in the document under ISBN HSS/MT/COVID-19/20-0006 dated the 27th of April, 2020, titled "Utilization of Decisions of Other Regulatory Authorities in Authorizing the Emergency Use of Medicines and Other Health Technologies in a Pandemic (for example, COVID-19)", released by the WHO/OPS, it is indicated that "Although it is not a regulatory authority, the PAHO/WHO recommends that the ARN consider the WHO to be a reliable and benchmark authority for effects of utilization of the decisions of regulatory authorities from other jurisdictions as regards prequalified or included products in the emergency use list";

That Law 1 of the 10th of January, 2001, according to its modification by Law 97 of the 4th of October, 2019, establishes that the Health Authority, through the National Drugs and Pharmacies Agency, upon prior technically based petition by the requesting public health or private entity, may authorize the importation of pharmaceutical products and raw materials necessary for the elaboration and commercialization of medicines without the corresponding Health Registry in order to meet the urgencies arising from the effects of public calamities and natural disasters;

That Law 109 of the 12th of November, 2019, which adopts the National Medicines Policy in the Republic of Panama, indicates in section 3 of its Article 2 that medicines are a social good essential for the recovery and maintenance of health, and for the prevention of diseases;

That by means of the Cabinet Decree No. 1 of the 15th of January, 1969, the Ministry of Health was created for the performance of actions for health promotion, protection, repair, and rehabilitation, which by constitutional mandate are responsibilities of the State; which, as an entity of the executive branch, has as its responsibility the design and handling of the government's health policy in the country and it is constituted, among others, by the International Technical Advisory of the PAHO/WHO;

That by means of Executive Order No. 64 on the 28th of January, 2020, the Executive Branch, through the Ministry of Health occasioned by the international pandemic, COVID-19, and, as a consequence, regulatory agencies such as the Food and Drug Administration of the United States of America (FDA) and the European Medicines Agency (EMA), among others, have adopted regulatory measures which weigh provisional emergency use authorizations, conditioned for medicines, setting special international standards for these approvals;

That through Cabinet Resolution No. 11 on the 13th of March, 2020, the State of National Emergency was declared and other provisions were dictated, in virtue of the Pandemic declaration for COVID-19, on the part of the World Health Organization;

That due to the current high demand around the world for the vaccines for the prevention of COVID-19 and the imminent need for our country to acquire them, it is necessary to permit access to them, notwithstanding strict compliance with the presentation of documents required by the Health Authority in order to proceed to Emergency Use Authorization for said vaccines;

That it is the duty and responsibility of the health authorities to assure the faithful fulfillment of all current health norms, and at this time it is deemed appropriate to adopt the recommendations of the WHO, among which is that of validating the Emergency Use Authorization for the vaccines against COVID-19, (initial by President Laurentino Cortizo Cohen)

No. 29219-B   Gaceta oficial Digital, Monday, February 15, 2021

## IT IS DECREED:

**Article 1.** To adopt the recommendations of the World Health Organization (WHO) in relation to the validation of the Emergency Use Authorization for the vaccines against SARS-CoV-2, as a means of facilitating the availability and use in all the national territory, by public health institutions. This authorization does not represent a Health Registry.

**Article 2.** To authorize, due to the health emergency and for as long as the National Emergency, declared on account of the pandemic caused by COVID-19, lasts, the importation of the vaccines against SARS-CoV-2, that the public institutions may require, with the aim of guaranteeing their availability and to safeguard the citizenry's health, in accordance with the provisions of Article 79 of Law 1 of 2001.

The requirements for the authorization of the importation of the vaccines against SARS-CoV-2 will be established through resolution by the National Pharmacy and Drug Agency of the Ministry of Health, in accordance with the provisions of Law 1 of the 10th of January, 2001.

**Article 3.** It will correspond to the National Pharmacy and Drugs Agency of the Ministry of Health, to issue, as an extraordinary measure, the Emergency Use Authorization that permits the provisional and conditioned use of the vaccines against SARS-CoV-2, as may be requested by the pharmaceutical operations for the use of the public institutions.

The National Pharmacy and Drugs Agency of the Ministry of Health will establish, by means of a resolution, a procedure for the issuance of the Emergency Use Authorization.

**Article 4.** To recommend to health professionals to take strong precautionary measures and vigilance for the possible appearance of unexpected reactions in persons who receive these vaccines, advising them and their family members to consult with their physician, in the face of any sign that suggests a change in behavior.

**Article 5.** This Executive Order repeals the Resolution No. 002 of the 7th of January, 2021.

**Article 6.** The provisions established through the present Executive Order will solely have effect for as long as the National Emergency Declaration lasts.

**Article 7.** The present Order will begin to have effect upon its promulgation.

**Basis in Law:** Political Constitution of the Republic; Law 66 of the 10th of November, 1947; Law 1 of the 10th of January, 2001; Law 109 of the 12th of November, 2019; Executive Order No. 64 of the 28th of January, 2020 and Cabinet Resolution No. 11 of the 13th of March, 2020.

**Be it published and so ordered.**

Issued in the city of Panama on the 15th day of the month of February, Two Thousand Twenty-one (one).

**Laurentino Cortizo Cohen (signature - signed)**
President of the Republic

**Luis Francisco Sucre M. (signature - signed)**
Minister of Health

No. 29445-F                     Gaceta Oficial Digital, jueves 30 de diciembre de 2021                                          1

# República de Panamá

## CONSEJO DE GABINETE

### RESOLUCIÓN DE GABINETE N.º129
de 29 de diciembre de 2021

Que declara concluido el término para la utilización del procedimiento especial de adquisiciones de bienes, servicios u obras decretado mediante la Resolución de Gabinete N.º 11 de 13 de marzo de 2020, que estableció el Estado de Emergencia Nacional

**EL CONSEJO DE GABINETE,**
en uso de sus facultades constitucionales y legales,

### CONSIDERANDO:

Que con motivo del inicio del brote de la pandemia originada por el nuevo Coronavirus (2019-nCoV), el Órgano Ejecutivo, por conducto del Ministerio de Salud, procedió a emitir el Decreto Ejecutivo No. 64 de 28 de enero de 2020, mediante el cual se adoptaron medidas imprescindibles e impostergables, contenidas en el Plan Nacional instituido ante la amenaza generada por el brote de dicha enfermedad contagiosa;

Que, con posterioridad a ello, el Consejo de Gabinete expidió la Resolución de Gabinete N.º 11 de 13 de marzo de 2020, que declaró el Estado de Emergencia Nacional como consecuencia de los efectos generados por la COVID-19, que afectaron la economía nacional y generaron alteraciones e interrupciones de las condiciones normales de funcionamiento u operación de las entidades del Estado, y afectaron la salud de la población del país en general;

Que la aplicación de la mencionada Resolución de Gabinete se fundamentó en el Texto Único de la Ley 22 de 2006, ordenado por la Ley 61 de 2017, que para ese entonces regulaba la contratación pública, lo que permitió al Estado contratar, a través de procedimiento especial, bienes, servicios u obras requeridos para hacer frente a la emergencia nacional;

Que como parte de las medidas adoptadas por el Gobierno Nacional con la finalidad de apoyar a la población afectada por la crisis económica generada por la pandemia, que supuso la terminación de la relación de trabajo de un importante sector de la población económicamente activa, la disminución de los horarios de trabajo, lo mismo que el cierre de empresas dedicadas a diferentes actividades económicas, se emitió el Decreto Ejecutivo No. 400 de 27 de marzo de 2020, que crea el Plan Panamá Solidario, a través del cual, se adoptaron medidas tales como: la entrega de bolsas de alimentos y la expedición del Vale Digital, que han sido extendidas hasta el mes de junio del año 2022;

Que igualmente, actuando con fundamento en el artículo 138 de la Ley 66 de 1947, que aprueba el Código Sanitario, se han asumido medidas preventivas de carácter extraordinarias en materia de salud pública, que incluyen la campaña de vacunación masiva, los controles de bioseguridad, la declaratoria de zonas epidémicas sujetas a control sanitario, la suspensión de actividades que supongan la concurrencia de gran número de personas, condicionada a los aforos establecidos por la autoridad sanitaria, entre otras;

Que si bien a la fecha de expedición de la presente Resolución de Gabinete, los informes epidemiológicos provenientes de la autoridad sanitaria acreditan la presencia en nuestro país de la variante de la COVID-19 identificada como Omicron, lo anterior se decide sin perjuicio de que se mantengan vigentes las medidas extraordinarias que, con fundamento en el artículo 138 de la Ley 66 re de 1947, ha ordenado o pudiera ordenar el Órgano Ejecutivo, a petición del Ministerio de Salud,

**RESUELVE:**

**Artículo 1.** Declarar concluido, a partir del 1 de enero de 2022, el término para la utilización del procedimiento especial de adquisiciones de bienes, servicios u obras decretado mediante la Resolución de Gabinete No. 11 de 13 de marzo de 2020, que estableció el Estado de Emergencia Nacional, modificada por las Resoluciones de Gabinete N.°18 de 2020, N.°33 de 2020, N.°38 de 2020, N.°45 de 2020, N.°48 de 2020, N.°49 de 2020, N.°52 de 2020, N.°54 de 2020, N.°65 de 2020, N.°76 de 2020 y en el año 2021 las Resoluciones N°.2 de 2021, N°.3 de 2021, N°. 54 de 2021 y N°.76 de 2021.

**Artículo 2.** La declaratoria realizada en el artículo anterior se hace sin perjuicio de las medidas extraordinarias que, con fundamento en el artículo 138 de la Ley 66 de 1947, pudiera ordenar el Órgano Ejecutivo, a petición del Ministerio de Salud.

**Artículo 3.** Mantener vigentes las medidas extraordinarias de carácter social, económico y sanitario, adoptadas por el Órgano Ejecutivo a consecuencia de la Pandemia de la COVID-19.

El Ministerio de Economía y Finanzas establecerá los mecanismos requeridos para hacer frente a los compromisos presupuestarios que se generen de las medidas de carácter social, económico y sanitarias.

**Artículo 4.** La presente Resolución de Gabinete empezará a regir a partir de su promulgación.

**FUNDAMENTO DE DERECHO:** Constitución Política de la República; Ley 66 de 1947, y Texto Único de la Ley 22 de 2006, ordenado por la Ley 61 de 2017.

**COMUNÍQUESE Y CÚMPLASE.**

Dada en la ciudad de Panamá, a los veintinueve (29) días del mes de diciembre del dos mil veintiuno (2021).

**LAURENTINO CORTIZO COHEN**
Presidente de la República

La ministra de Gobierno,

**JANAINA TEWANEY MENCOMO**

La ministra de Educación,

**MARUJA GORDAY DE VILLALOBOS**

El ministro de Salud,

**LUIS FRANCISCO SUCRE MEJÍA**

El ministro de Comercio e Industrias,

**RAMÓN MARTÍNEZ**

El ministro de Desarrollo Agropecuario,

**AUGUSTO VALDERRAMA**

El ministro de Economía y Finanzas,

**HECTOR E. ALEXANDER H.**

El ministro para Asuntos del Canal,

**ARISTIDES ROYO**

La ministra de Relaciones Exteriores,
encargada

**DAYRA CARRIZO CASTILLERO**

El ministro de Obras Públicas,

**RAFAEL SABONGE**

La ministra de Trabajo y Desarrollo Laboral,

**DORIS ZAPATA ACEVEDO**

El ministro de Vivienda y Ordenamiento Territorial,

**ROGELIO ENRIQUE PAREDES ROBLES**

La ministra de Desarrollo Social,

**MARÍA INÉS CASTILLO LÓPEZ**

El ministro de Seguridad Pública,

**JUAN MANUEL PINO F.**

El ministro de Ambiente,

**MILCIADES CONCEPCIÓN**

El ministro de Cultura,

**CARLOS AGUILAR**

**JOSÉ GABRIEL CARRIZO JAÉN**
ministro de la Presidencia y
secretario general del Consejo de Gabinete,





**REPÚBLICA DE PANAMÁ**
**ÓRGANO JUDICIAL**
**CORTE SUPREMA DE JUSTICIA - PLENO**

Panamá, cinco (5) de agosto de dos mil veintidós (2022).

**VISTOS:**

En fase de admisibilidad, conoce el Pleno de la Corte Suprema de Justicia, la demanda de inconstitucionalidad presentada por la licenciada Jeacqueline Probst Selles, contra el Decreto Ejecutivo N°99 de 15 de febrero de 2021, por vulnerar los artículos 4, 17, 18, 49 y 109 de la Constitución Política.

**DISPOSICIÓN DEMANDADA DE INCONSTITUCIONAL**

La norma jurídica objeto de la demanda es el Decreto Ejecutivo N°99 de 15 de febrero de 2021 que acoge las recomendaciones de la Organización Mundial de la Salud (OMS) para las vacunas contra el SARS-CoV-2, como mecanismo para facilitar su disponibilidad y uso en el territorio nacional y, además:

1. Autoriza la importación de las vacunas contra la SARS-CoV-2 mientras dure la emergencia nacional declarada en virtud de la pandemia a que dio lugar;

2. Fija en la Dirección Nacional de Farmacias y Drogas del Ministerio de Salud la obligación de definir, mediante resoluciones, los requisitos de importación de las vacunas aludidas, las autorizaciones para su uso de emergencia y el procedimiento para su expedición;

3. Recomienda a los profesionales de la salud las medidas de seguimiento y su

nivel de rigurosidad en torno a la aplicación de las vacunas señaladas;

4. Deroga la Resolución N°002 de 7 de enero de 2021;

5. Establece que su vigencia es a partir de su promulgación y;

6. Determina que sus disposiciones solo tendrán efecto mientras subsista la Declaración de Emergencia Nacional.

## CONSIDERACIONES Y DECISIÓN DEL PLENO

Con la finalidad de pronunciarse sobre la admisibilidad de la demanda de inconstitucionalidad que nos ocupa, el Pleno procede a verificar si cumple con las exigencias procesales contenidas en los artículos 101, 665, 2559, 2560 y 2561 del Código Judicial y los criterios jurisprudenciales que la Corte Suprema de Justicia tiene establecidos en la materia.

La demanda bajo examen está dirigida a la Presidenta de la Corte Suprema de Justicia, como lo exige el artículo 101 del Código Judicial y cumple con los requisitos formales comunes a todas las demandas en cuanto a la identificación de la demandante, el alcance de lo que pide que es la declaratoria de inconstitucionalidad del Decreto Ejecutivo N°99 de 15 de febrero de 2021 y la exposición de los hechos en que basa su pretensión.

En cuanto a los requisitos formales específicos de la demanda de inconstitucionalidad, percibe el Pleno que la accionante señaló el número y fecha de la Gaceta Oficial en que fue promulgado el Decreto Ejecutivo demandado, lo transcribió e hizo lo mismo con las de naturaleza constitucional que estima infringidas, cuestión a la que suceden una serie de explicaciones acerca del concepto de la infracción que, a criterio del Pleno, resultan ineficaces para estimar cumplido este requisito establecido en el apartado final del numeral 2 del artículo 2560 del Código Judicial.

Lo anterior es así, porque se centran en censurar, desde un punto de vista manifiestamente subjetivo, el acto normativo demandado en lugar de ofrecer razones argumentativamente inequívocas, delimitadas, pertinentes y suficientes acerca del

2

posible conflicto de cada uno de sus artículos con las normas constitucionales a las que alude.

Es decir, de cara a este tipo de acciones, los cargos de infracción deben ser explicados de forma que exterioricen plena armonía y cohesión que permitan su compresión; un contenido constatable en la norma y no elucubraciones, especulaciones o inferencias del proponente o a apartados verificables en otras disposiciones no demandadas; motivos no ambiguos, genéricos o inciertos, sino puntuales en cuanto a la supuesta contradicción entre las disposiciones de la Carta Magna que se dicen infringidas y el contenido normativo preciso impugnado; razones que sean de índole constitucional, no legal, doctrinaria o subjetivas del demandante acerca de la utilidad o los perjuicios derivados de su vigencia y que los argumentos alcancen un mínimo umbral persuasivo acerca de la necesidad de que esta Máxima Corporación de Justicia defina en el asunto traído a su conocimiento, si sobre el mismo debe operar una depuración que lo excluya del ordenamiento jurídico general.



Con esto en mente, es evidente que no se ofrecen motivos idóneos de cara al numeral 2 del artículo 2560 del Código Judicial, cuando en el concepto de la infracción de los artículos 4, 17, 18, 49 y 109 de la Carta Magna se emplean argumentos como los siguientes:

1. Se incumple el artículo 4 constitucional ya que las vacunas pueden ocasionar muchísimos efectos adversos, incluso la muerte y el derecho a la vida se encuentra consagrado en la Convención Americana sobre Derechos Humanos;

2. Se viola el artículo 17 pues lejos de proteger la vida y el derecho a la salud de la población, la colocan en un estado de riesgo mayor con vacunas autorizadas por emergencia no justificada y carente de evidencia científica;

3. La violación al artículo 18 constitucional radica en que los artículos 2 y 3 del decreto ejecutivo fueron establecidos obviando el cumplimiento de múltiples normativas y leyes vigentes como se aprecia en los considerandos al citar la Ley N°66 de 1947, la Ley N°1 de 2001, la Ley N°109 de 2019, etc.;

3

4. Se incumple con el artículo 49 constitucional al autorizar la supuesta emergencia, en ningún momento justificada técnica y científicamente localmente, como se aprecia en la Resolución de Gabinete N°11 de 13 de marzo de 2020, unas vacunas contra el Covid-19, sin cumplir con el derecho a la información veraz de la población previsto en la Ley N°68 de 20 de noviembre de 2003;

5. El contenido del artículo 2 del Decreto Ejecutivo N°99 de 2021 viola el artículo 109 de la Constitución Política porque es contrario a la función esencial del Estado de velar por la salud de la población y al derecho de protección y conservación de la misma que tiene todo individuo, tomando en consideración la completa desinformación por parte de la autoridad sanitaria en cuanto al incumplimiento del principio precautorio en salud pública, la inexistencia de registro sanitario de las vacunas y su carácter innecesario real frente a la existencia de tratamientos efectivos y menos riesgos contra la enfermedad.

Vistos los motivos que se ofrecen para provocar el examen constitucional del Decreto Ejecutivo N°99 de 15 de febrero de 2021, el Pleno llega a la conclusión que se trata de críticas o reproches a su contenido que no superan la subjetividad por parte de quien sostiene la convicción personal de que la regulación del procedimiento para la importación y requisitos para la posterior aplicación de las vacunas contra el SARS-CoV-2 en virtud de la pandemia a la que dio lugar, no fue la medida más adecuada por parte del órgano ejecutivo.

Así las cosas, los argumentos reseñados no son eficaces para relacionar la norma demandada con la violación a los artículos 4, 17, 18, 49 y 109 de la Carta Magna, lo cual, por sí solo, conduce a la inadmisión de la demanda presentada.

A ello se suma, no obstante, la insubsistencia de la norma jurídica que nos ocupa, cuyo artículo 6 prescribe de forma categórica que sus disposiciones "únicamente tendrán efecto mientras subsista la Declaración de Emergencia Nacional", a la cual implícitamente puso término la Resolución de Gabinete N°129 de 29 de diciembre de

2021 promulgada en la Gaceta Oficial N°29445-F de 30 de diciembre de 2021 "Que declara concluido el término para la utilización del procedimiento especial de adquisiciones de bienes, servicios u obras decretado mediante la Resolución de Gabinete N°11 de 13 de marzo de 2020, que estableció el Estado de Emergencia Nacional".

En este sentido, la guarda de la integridad de la Constitución Política se lleva a cabo respecto a normas jurídicas que proyecten algún efecto en función de su vigencia, lo cual no ocurre cuando son expresamente derogadas, reemplazadas por otras o agotan el término preciso de eficacia jurídica señalado en ellas, supuesto este último en el que nos encontramos, puesto que el estado de emergencia al que estaba vinculado positivamente el Decreto Ejecutivo N°99 de 2021, concluyó el 1 de enero de 2022, según el artículo 1 de la mencionada Resolución de Gabinete N°129 de 29 de diciembre de 2021.

Esto es así, porque el estado de emergencia es un supuesto que solo tiene existencia jurídica en función de la Ley N°22 de 27 de junio de 2006 (Que regula la contratación pública), para dar paso a un procedimiento especial de adquisición de bienes, servicios u obras públicas establecido en su artículo 85[1] durante el plazo y monto máximos fijados por el Consejo de Gabinete.

El concepto está contenido en el artículo 163.8 de la Constitución Política y se refiere a una de las prohibiciones a la Asamblea Nacional para permitir que, excepcionalmente, pueda "Ordenar o autorizar otras partidas y programas no previstos en el Presupuesto General del Estado". Por lo tanto, su contexto normativo es la contratación pública y conceptualmente se trata de un procedimiento especialmente expedito de adquisiciones de emergencia a utilizarse hasta alcanzar en conjunto la suma autorizada por el Consejo de Gabinete y dentro del plazo señalado por dicho cuerpo colegiado, tal como lo prescribe el aludido artículo 85 de la Ley N°22 de 2006. Veamos:

---

[1] Que correspondía al número 79 del texto de la Ley N°22 de 2006 vigente en marzo del año 2020.

5

"Artículo 85. Procedimiento especial de adquisiciones de emergencia. Cuando el Consejo de Gabinete declare emergencia, las entidades estatales podrán contratar la adquisición de bienes, servicios u obras a través del procedimiento especial.

La resolución de gabinete que declare el estado de emergencia y autorice la contratación mediante el procedimiento especial de adquisiciones deberá indicar la suma total autorizada para contrataciones especiales y el período dentro del cual esas contrataciones podrán hacerse.

El procedimiento especial de adquisiciones de emergencia podrá utilizarse hasta alcanzar en conjunto la suma autorizada y dentro del plazo señalado.

En los casos de emergencia en los que sea necesaria la adquisición de agua y alimentos destinados para el consumo inmediato, no se exigirá la presentación de fianzas; sin embargo, el contratista a través del contrato debe garantizar a la entidad contratante su obligación de responder por los vicios de los bienes adquiridos. Igualmente, el contrato deberá establecer que el pago del contratista se hará con posterioridad a la ejecución del objeto del contrato.

Si se requirieran bienes que no puedan ser suministrados en el mercado local, las entidades quedan facultadas para adquirirlos a empresas no nacionales, aunque con la obligación de estas de registrarse a posteriori en el Registro de Proponentes del Sistema Electrónico de Contrataciones Públicas "PanamaCompra".

Una vez concluido el término señalado en la resolución de gabinete que declaró la emergencia, las entidades contratantes presentarán al Consejo de Gabinete un informe detallado de las contrataciones realizadas. Dicho informe será publicado en el Sistema Electrónico de Contrataciones Públicas "PanamaCompra", a más tardar a los cinco días hábiles siguientes a la presentación en el Consejo de Gabinete. Si no se consumieron o utilizaron todos de los bienes adquiridos, los remanentes deberán ser puestos a disposición del Sistema Nacional de Protección Civil del Ministerio de Gobierno o de la Dirección de Asistencia Social del Ministerio de la Presidencia. Las entidades deberán consultar la tienda virtual antes de acogerse a este procedimiento especial y verificar si los productos o servicios requeridos para atender la emergencia están o no incluidos en dicha tienda".



En concordancia con lo anterior, en la medida que la Resolución de Gabinete N°129 de 29 de diciembre de 2021 "declara concluido, a partir del 1 de enero de 2022, el término para la utilización del procedimiento especial de adquisiciones de bienes, servicios u obras decretado mediante la Resolución de Gabinete N°11 de 13 de marzo de 2020, que estableció el Estado de Emergencia Nacional", se fija igualmente la conclusión de este último, ya que no tiene existencia jurídica independiente del plazo y montos que autoriza como mecanismo de contratación pública diferenciado del resto de los procedimientos de selección de contratista regulares y excepcionales que desarrolla la mencionada Ley N°22 de 2006.

Llegada a su fin la Declaración de Emergencia Nacional, se agota la condición que, según lo señala su artículo 6, concedía vigencia al Decreto Ejecutivo N°99 de 15 de

febrero de 2021, situación que impide efectuar un posible control sobre su constitucionalidad puesto que la presente, no es una instancia didáctica, sino la más importante dentro del Estado de Derecho porque cumple un cometido concreto sobre la normatividad de la Nación para preservar la supremacía de la Constitución Política, lo cual determina que debe incidir en disposiciones jurídicas en vigor, porque son éstas y no las pasadas, las que deben sujeción a sus principios y contenidos.

En virtud de lo anterior, lo que corresponde es no admitir esta causa, y a ello se procede.

### PARTE RESOLUTIVA

En mérito de lo expuesto, el Pleno de la Corte Suprema de Justicia, administrando justicia en nombre de la República y por autoridad de la Ley, **NO ADMITE** la Acción de Inconstitucionalidad interpuesta por la licenciada Jeacqueline Probst Selles, contra el Decreto Ejecutivo N°99 de 15 de febrero de 2021.

**FUNDAMENTO DE DERECHO:** Artículo 206 de la Constitución Política y Artículos 101, 665, 2559, 2560 y 2561 del Código Judicial.

Notifíquese,

MARIBEL CORNEJO BATISTA

MARÍA EUGENIA LÓPEZ ARIAS

CARLOS ALBERTO VÁSQUEZ REYES

JOSÉ E. AYÚ PRADO CANALS

ANGELA RUSSO DE CEDEÑO

OLMEDO ARROCHA OSORIO
CON VOTO RAZONADO

CECILIO CEDALISE RIQUELME

7

MARÍA CRISTINA CHEN STANZIOLA        MIRIAM CHENG ROSAS



YANIXSA Y. YUEN C.
Secretaria General



8



Entrada N° 70769-2022
Magda. Ponente: Maribel Cornejo Batista

**VOTO RAZONADO**
**MAGISTRADO OLMEDO ARROCHA O.**

Respetuosamente, debo manifestar que, comparto la decisión contenida en el presente Fallo, mediante el cual se decide no admitir la demanda de inconstitucionalidad interpuesta por la licenciada Jeacqueline Probst Selles en contra del Decreto Ejecutivo No. 99 de 15 de febrero de 2021, emitido por el Ministerio de Salud, toda vez que, efectivamente, no cumple con el requisito indispensable para la admisión de esta clase de demandas; siendo este, el numeral 2 del artículo 2560 del Código Judicial.

Sin embargo, debo manifestar que discrepo de algunos aspectos señalados en la parte motiva del mismo, en el sentido que a continuación se expondrán.

A partir del último párrafo de la foja 4 del Fallo, se desarrolla una motivación que, considera el suscrito, desarrolla aspectos atinentes al fondo de la controversia. Sin embargo, al haberse entrado a analizar ese aspecto, que consiste en determinar el desarrollo acerca de la insubsistencia de las normas demandadas que, de acuerdo al contenido del Fallo, puso término la Resolución de Gabinete No. 129 de 29 de diciembre de 2021; es decir que, la Resolución referida alcance a resolver el levantamiento del Estado de Emergencia Nacional, debo, respetuosamente, apartarme dicho criterio.

Esto es porque, la Resolución de Gabinete No. 129 de 29 de diciembre de 2021 (artículo 1), si bien declara concluido el término para las contrataciones mediante procedimiento especial de adquisiciones para la ejecución de obras y adquisición de bienes y/o servicios que se requieran en función de lo dispuesto en el artículo 2 de la Resolución de Gabinete No. 11 de 13 de marzo de 2020; también se dispone en el artículo 3 de dicha Resolución de Gabinete lo siguiente: "***Artículo 3. Mantener vigentes las medidas extraordinarias de carácter social, económico y sanitario, adoptadas por el órgano Ejecutivo a consecuencia de la Pandemia de la COVID-19.***"; por tanto, a mi juicio, no resulta viable afirmar que dicha resolución ha cesado el Estado de Emergencia Nacional de forma tácita, como lo ha referido el presente Fallo.



Las consideraciones aquí expuestas recogen un razonamiento contrario a la parte motiva que he señalado, que es mi interés sea consignada al Fallo del cual versa, consituyendo el contenido de este VOTO RAZONADO.

**Olmedo Arrocha Osorio**
**Magistrado**

**Licda. Yanixsa Y. Yuen**
Secretaria General



LO ANTERIOR DE FOJA _113_ A FOJA _120_
ES FIEL COPIA DE SU ORIGINAL

Panamá _21_ de _octubre_ de 20 _22_

Secretario General de la
Corte Suprema de Justicia
CARLOS M...
OFICIAL MAYOR IV
CORTE SUPREMA DE JUSTICIA

**REPÚBLICA DE PANAMÁ**
**ÓRGANO JUDICIAL CORTE**
**SUPREMA DE JUSTICIA - PLENO**

Panamá, cinco (5) de agosto de dos mil
veintidós (2022).

**VISTOS:**

En fase de admisibilidad, conoce el
Pleno de la Corte Suprema de Justicia,
la demanda de inconstitucionalidad
presentada por la licenciada
Jeacqueline Probst Selles, contra el
Decreto Ejecutivo N°99 de 15 de febrero
de 2021, por vulnerar los artículos 4, 17,
18, 49 y 109 de la Constitución Política.

**DISPOSICIÓN DEMANDADA DE**
**INCONSTITUCIONAL**

La norma jurídica objeto de la demanda
es el Decreto Ejecutivo N°99 de 15 de
febrero de 2021 que acoge las
recomendaciones de la Organización
Mundial de la Salud (OMS) para las
vacunas contra el SARS-CoV-2, como
mecanismo para facilitar su
disponibilidad y uso en el territorio
nacional y, además:

1.    Autoriza la importación de las
      vacunas contra la SARS-CoV-2
      mientras dure la emergencia
      nacional declarada en virtud de la
      pandemia a que dio lugar.

**REPUBLIC OF PANAMA**
**JUDICIAL**
**SUPREME COURT**

Panama, Fifth of August of two
thousand twenty-two (2022).

**HAVING REVIEWED:**

In the admissibility stage, the Majority of
the Supreme Court of Justice, considers
the suit regarding a constitutional matter
brought by Jeacqueline Probst Selles,
attorney at law, against the Executive
Order No. 99 from the 15th of February,
2021, alleged to have violated Articles 4,
17, 18, 49 and 109 of the Political
Constitution.

**REQUESTED FINDING REGARDING**
**CONSTITUTIONALITY**

The juridical norm, object of this suit is
the Executive Order No. 99 issued the
15th of February, 2021 which
adopts/embraces the recommendations
of the World Health Organization (WHO)
for vaccinations against the
SARS-CoV-2 virus, as a means of
providing for its availability and use
within the national borders, and in
addition:

1.    It authorizes the importation of
      vaccines against SARS-CoV-2 as
      long as the national emergency
      lasts, declared in virtue of the
      pandemic which gave rise to it;

2.      Fija en la Dirección Nacional de Farmacias y Drogas del Ministerio de Salud la obligación de definir, mediante resoluciones, los requisitos de importación de las vacunas aludidas, las autorizaciones para su uso de emergencia y el procedimiento para su expedición;

3.      Recomienda a los profesionales de la salud las medidas de seguimiento y su nivel de rigurosidad en torno a la aplicación de las vacunas señaladas

4.      Deroga la Resolución N°002 de 7 de enero de 2021;

5.      Establece que su vigencia es a partir de su promulgación y;

6.      Determina que sus disposiciones sólo tendrán efecto mientras subsista la Declaración de Emergencia Nacional.

## CONSIDERACIONES Y DECISIÓN DEL PLENO

Con la finalidad de pronunciarse sobre la admisibilidad de la demanda de inconstitucionalidad que nos ocupa, el Pleno procede a verificar si cumple con las exigencias procesales contenidas en los artículos 101, 665, 2559, 2560 y 2561 del Código Judicial y los criterios jurisprudenciales que la Corte Suprema de Justicia tiene establecidos en la materia.

2. It establishes in the [Panamanian] National Drugs and Pharmacies Administration of the Health Ministry the obligation to define, through resolutions, the importation requirements of the abovementioned vaccines, the authorizations for their emergency use and the procedure for its expedition;

3.      It recommends to health professionals the tracking measures and their level of rigor regarding the application of the noted vaccines;

4. It repeals Resolution No. 0002 issued the 7th of January of 2021;

5. It establishes that it enters effect on the date of its issuance and;

6. <u>It states that its provisions will remain in effect as long as the Declaration of National Emergency persists.</u>

## CONSIDERATIONS AND DECISION OF THE COURT

With the intent of declaring <u>on the admissibility/standing of the suit/case alleging constitutional violations</u> before us, the [Pleno] Court [unanimously] proceeds in determining whether it fulfills the procedural requirements contained in Articles 101, 665, 2559, 2560, and 2561 of the Judicial Code and the jurisprudential criteria which the Supreme Court has established in these matters.

La demanda bajo examen está dirigida a la Presidenta de la Corte Suprema de Justicia, como lo exige el artículo 101 del Código Judicial y cumple con los requisitos formales comunes a todas las demandas en cuanto a la identificación de la demandante, el alcance de lo que pide que es la declaratoria de inconstitucionalidad del Decreto Ejecutivo N°99 de 15 de febrero de 2021 y la exposición de los hechos en que basa su pretensión.

En cuanto a los requisitos formales específicos de la demanda de inconstitucionalidad, percibe el Pleno que la accionante señaló el número y fecha de la Gaceta Oficial en que fue promulgado el Decreto Ejecutivo demandado, lo transcribió e hizo lo mismo con las de naturaleza constitucional que estima infringidas, cuestión a la que suceden una serie de explicaciones acerca del concepto de la infracción que, a criterio del Pleno, resultan ineficaces para estimar cumplido este requisito establecido en el apartado final del numeral 2 del artículo 2560 del Código Judicial.

Lo anterior es así, porque se centran en censurar desde un punto de vista manifiestamente subjetivo el acto normativo demandado en lugar de ofrecer razones argumentativamente inequívocas, delimitadas, pertinentes y suficientes acerca del posible conflicto de cada uno de sus artículos con las normas constitucionales a las que alude.

The suit/case/claim under review is addressed to the President of the Supreme Court, [Maria Eugenia Lopez Arias] as required by article 101 of the Judicial Code and fulfills the formal requirements common to all suits regarding the identification of the plaintiff, the scope of the petition which is a finding of the unconstitutionality of the Executive Order No. 99 issued on the 15th of February, 2021 as well as the disclosure of the facts which underlies the suit's claim.

As regards the formal requirements of the unconstitutionality claim, the Full Court notes that the claimant indicated the number and date of the Official Gazette in which the impugned Executive Order was promulgated, transcribed it and did likewise with those of constitutional nature the claimant considers to have been infringed, a matter to which a series of explanations follow concerning the conception of the infraction which, in the opinion of the Full Court, prove to be insufficient in fulfilling the requirement established in the final paragraph of section 2 of article 2560 of the Judicial Code.

Such is the finding because they [the explanations] are focused on censuring, from a manifestly subjective point of view, the defendant regulatory act instead of offering unequivocal, defined, pertinent and sufficient argumentation regarding the possible conflict with each one of its articles with the constitutional norms referenced.

Es decir, de cara a este tipo de acciones, los cargos de infracción deben ser explicados de forma que exterioricen plena armonía y cohesión que permitan su compresión; un contenido constatable en la norma y no elucubraciones, especulaciones o inferencias del proponente o a apartados verificables en otras disposiciones no demandadas; motivos no ambiguos, genéricos o inciertos, sino puntuales en cuanto a la supuesta contradicción entre las disposiciones de la Carta Magna que se dicen infringidas y el contenido normativo preciso impugnado; razones que sean de índole constitucional, no legal, doctrinaria o subjetivas del demandante acerca de la utilidad o los perjuicios derivados de su vigencia y que los argumentos alcancen un mínimo umbral persuasivo acerca de la necesidad de que esta Máxima Corporación de Justicia defina en el asunto traído a su conocimiento, si sobre el mismo debe operar una depuración que lo excluya del ordenamiento jurídico general.

Con esto en mente, es evidente que no se ofrecen motivos idóneos de cara al numeral 2 del artículo 2560 del Código Judicial, cuando en el concepto de la infracción de los artículos 4, 17, 18, 49 y 109 de la Carta Magna se emplean argumentos como los siguientes:

That is to say, in contemplating this kind of claim, the assertions of violations must be explained in such a way that they exhibit full harmony and coherence allowing for their compression; verifiable content in the norm and no elucubrations, speculations or inferences from the claimant or to verifiable paragraphs in other resolutions not under challenge; unambiguous, generic or vague motives, but rather specific ones regarding the supposed contradiction between the dispositions of the Constitution presumed to have been infringed and the specific impugned normative content; reasoning that are of a constitutional nature, not legal, doctrinaire or subjective ones from the plaintiff concerning the utility or harms deriving from its enforcement and that the arguments reach a minimum threshold of persuasion as to the need for this principal Judicial Entity to define in the matter brought before it, if regarding the same a remedy must operate which may exclude it from general juridical regulation.

With this mind, it is evident that suitable motives are not present in relation to section 2 of article 2560 of the Judicial Code, when, under the notion of an infraction of articles 4, 17, 18, 49 and 109 of the Constitution, arguments such as the following are employed:

1.  Se incumple el artículo 4 constitucional ya que las vacunas pueden ocasionar muchísimos efectos adversos, incluso la muerte y el derecho a la vida se encuentra consagrado en la Convención Americana sobre Derechos Humanos;

2. Se viola el artículo 17 pues lejos de proteger la vida y el derecho a la salud de la población, la colocan en un estado de riesgo mayor con vacunas autorizadas por emergencia no justificada y carente de evidencia científica;

3.  La violación al artículo 18 constitucional radica en que los artículos 2 y 3 del decreto ejecutivo fueron establecidos obviando el cumplimiento de múltiples normativas y leyes vigentes como se aprecia en los considerandos al citar la Ley N°66 de 1947, la Ley N°1 de 2001, la Ley N°109 de 2019, etc.;

4. Se incumple con el artículo 49 constitucional al autorizar la supuesta emergencia, en ningún momento justificada técnica y científicamente localmente, como se aprecia en la Resolución de Gabinete N°11 de 13 de marzo de 2020, unas vacunas contra el Covid-19, sin cumplir con el derecho a la información veraz de la población previsto en la Ley N°68 de 20 de noviembre de 2003.

1.  Article 4 of the Constitution is breached given that the vaccines can cause many adverse effects, including death and the right to life as is established in the American Convention on Human Rights;

2.  Article 17 is violated since far from protecting life and the population's right to health, it is placed at great risk with the vaccines authorized by an unjustified emergency, and lacking in scientific evidence;

3.  The violation of Article 18 of the Constitution rests on the fact that articles 2 and 3 of the executive order were established skirting compliance with multiple norms and current laws as is apparent in the legal reasonings upon citing Law No 66 of 1947, Law No 1 of 109, Law 109 of 2019, etc.;

4.  Article 49 of the Constitution is breached upon authorizing the alleged emergency, at no moment justified locally either technically or scientifically, as can be noted in Cabinet Resolution No. 11 on the 13th of March, 2020, some vaccines against Covid-19, without fulfilling the population's right to accurate information as provided in Law 68 of 20th of November, 2003;

5.      El contenido del artículo 2 del Decreto Ejecutivo N°99 de 2021 viola el artículo 109 de la Constitución Política porque es contrario a la función esencial del Estado de velar por la salud de la población y al derecho de protección y conservación de la misma que tiene todo individuo, tomando en consideración la completa desinformación por parte de la autoridad sanitaria en cuanto al incumplimiento del principio precautorio en salud pública, la inexistencia de registro sanitario de las vacunas y su carácter innecesario real frente a la existencia de tratamientos efectivos y menos riesgos contra la enfermedad.

Vistos los motivos que se ofrecen para provocar el examen constitucional del Decreto Ejecutivo N°99 de 15 de febrero de 2021, el Pleno llega a la conclusión que se trata de críticas o reproches a su contenido que no superan la subjetividad por parte de quien sostiene la convicción personal de que la regulación del procedimiento para la importación y requisitos para la posterior aplicación de las vacunas contra el SARS COV-2 en virtud de la pandemia a la que dio lugar, no fue la medida más adecuada por parte del órgano ejecutivo.

5. The content of article 2 of the Executive Order No. 99 of 2021 violates article 109 of the Constitution because it is contrary to the essential function of the State to ensure the health of the population and to the right to protection and preservation of the same that every individual possesses, taking into consideration the complete disinformation on the part of the health authority regarding the violation of the precautionary principle in public health, the absence of a sanitary registry of the vaccines and their true unnecessary nature in the presence of effective and less risky treatments against the illness.

Having heard the reasons offered to instigate the constitutional review of the Executive Order No. 99 issued the 15th of February, 2021, the Court [Unanimously] concludes that [the suit] it deals with criticisms or reproaches of its [EO] content which do not overcome the subjectivity of the individual who holds the personal conviction that the regulation of the procedure for the importation and the requirements for the subsequent application of the vaccines against the SARS-CoV-2 virus in light of the pandemic which gave rise to it, was not the most appropriate measure on the part of the executive branch.

Así las cosas, los argumentos reseñados no son eficaces para relacionar la norma demandada con la violación a los artículos 4, 17, 18, 49 y 109 de la Carta Magna lo cual, por sí solo, conduce a la inadmisión de la demanda presentada.

A ello se suma, no obstante, la insubsistencia de la norma jurídica que nos ocupa, cuyo artículo 6 prescribe de forma categórica que sus disposiciones "únicamente tendrán efecto mientras subsista la Declaración de Emergencia Nacional", a la cual implícitamente puso término la Resolución de Gabinete N°129 de 29 de diciembre de 2021 promulgada en la Gaceta Oficial N°29445-F de 30 de diciembre de 2021 "Que declara concluido el término para la utilización del procedimiento especial de adquisiciones de bienes, servicios u obras decretado mediante la Resolución de Gabinete N°11 de 13 de marzo de 2020, que estableció el Estado de Emergencias Nacional".

This being the case, the arguments outlined are not effective in relating the challenged norm with the violation of Articles 4, 17, 18, 49, and 109 of the Constitution, which, on its own, leads to the rejection/refusal of the claim/suit under review.

To wit, it is added, notwithstanding, the ineligibility of the juridical norm under consideration, whose article 6 proscribes categorically that its disposition "will solely have effect as long as the Declaration of National Emergency persists", to which the Cabinet Resolution No. 129 of the 29th of December 2021, published in the Official Gazette No. 29445-F on the 30th of December 2021, implicitly put an end, stating, "Whereas the term for the utilization of the special procedure of acquisition of goods, services or works decreed by means of Cabinet Resolution No. 11 of the 13th of March, 2020, which established the State of National Emergency is concluded".

En este sentido, la guarda de la integridad de la Constitución Política se lleva a cabo respecto a normas jurídicas que proyecten algún efecto en función de su vigencia, lo cual no ocurre cuando son expresamente derogadas, reemplazadas por otras o agotan el término preciso de eficacia jurídica señalado en ellas, supuesto este último en el que nos encontramos, puesto que el estado de emergencia al que estaba vinculado positivamente el Decreto Ejecutivo N°99 de 2021, concluyó el 1 de enero de 2022, según el artículo 1 de la mencionada Resolución de Gabinete N°129 de 29 de diciembre de 2021.

Esto es así, porque el estado de emergencia es un supuesto que sólo tiene existencia jurídica en función de la Ley N°22 de 27 de junio de 2006 (Que regula la contratación pública), para dar paso a un procedimiento especial de adquisición de bienes, servicios u obras públicas establecido en su artículo 85[1] durante el plazo y monto máximos fijados por el Consejo de Gabinete.

El concepto está contenido en el artículo 163.8 de la Constitución Política y se refiere a una de las prohibiciones a la Asamblea Nacional para permitir que, excepcionalmente, pueda "Ordenar o autorizar otras partidas y programas no previstos en el Presupuesto General del Estado". Por lo tanto, su contexto normativo es la contratación pública y conceptualmente se trata de un procedimiento especialmente expedito

de adquisiciones de emergencia a utilizarse hasta alcanzar en conjunto

In this sense, the protection of the Constitution's integrity is carried out with respect to the juridical norms that may cast some effect regarding its duration, which does not occur when they are expressly repealed, replaced by others, or exhaust the precise term of judicial force described in them, understood in the one we find ourselves in, given that the state of emergency, to which the <u>Executive Order No. 99 of 2021 was positively linked, concluded the 1st of January, 2022, according to article 1 of the aforementioned Cabinet Resolution No. 129 of the 29th of December, 2021.</u>

It is thus because the state of emergency is a scenario that only possesses juridical effect in function of Law No. 22 of the 27th of June, 2006 (which regulates the public contracting), in order to give way to a special procedure for the acquisition of goods, services or public works established in article 85[2] of said law during the term and for the maximum amount set by the Ministerial Cabinet.

The concept is contained in article 163.8 of the Constitution and refers to one of the prohibitions to the National Assembly in order to allow that, on exception, it may 'Order and authorize other allocations and programs unforeseen in the General Budget.' As such, its normative context is the public

---

[1] Que correspondía al número 79 de la ley No. 22 de 2006 vigente en marzo del año 2020.

[2] Which corresponded to number 79 of Law No. 22 of 2006 in force in March 2020.

contracting and conceptually it deals with a specially expedited procedure for emergency acquisitions to be used until reaching in total

la suma autorizada por el Consejo de Gabinete y dentro del plazo señalado por dicho cuerpo colegiado, tal como lo prescribe el aludido artículo 85 de la Ley N°22 de 2006. Veamos:

"Artículo 85. Procedimiento especial de adquisiciones de emergencia. Cuando el Consejo de Gabinete declare emergencia, las entidades estatales podrán contratar la adquisición de bienes, servicios u obras a través del procedimiento especial. La resolución de gabinete que declare el estado de emergencia y autorice la contratación mediante el procedimiento especial de adquisiciones deberá indicar la suma total autorizada para contrataciones especiales y el periodo dentro del cual esas contrataciones podrán hacerse.

El procedimiento especial de adquisiciones de emergencia podrá utilizarse hasta alcanzar en conjunto la suma autorizada y dentro del plazo señalado.

En los casos de emergencia en los que sea necesaria la adquisición de agua y alimentos destinados para el consumo inmediato, no se exigirá la presentación de fianzas; sin embargo, el contratista a través del contrato debe garantizar a la entidad contratante su obligación de responder por los vicios de los bienes adquiridos. Igualmente, el contrato

deberá establecer que el pago del contratista se hará con posterioridad a la ejecución del objeto del contrato.

the amount authorized by the Cabinet Resolution and within the term indicated by said deliberative body, as said article 85 of Law No. 22 of 206 prescribes. Let us consider:

"Article 85. Special emergency procurement procedure. When the Cabinet Council declares an emergency, state entities may contract the acquisition of goods, services, or works through the special procedure. The cabinet resolution declaring a state of emergency and authorizing the contracting through the special procurement procedure must indicate the total amount authorized for special contracts and the period within which these contracts may be made.

The special emergency procurement procedure may be used until reaching the authorized sum as a whole and within the indicated period.

In cases of emergency in which it is necessary to purchase water and food intended for immediate consumption, the presentation will not be required of sureties; however, the contractor through the contract must guarantee to the contracting entity its obligation to respond for the defects of the goods acquired. Likewise, the contract must establish that the contractor's payment will be done after the execution of the object of the contract.

Si se requirieran bienes que no puedan ser suministrados en el mercado local, las entidades quedan facultadas para adquirirlos a empresas no nacionales, aunque con la obligación de estas de registrarse a posteriori en el Registro de Proponentes del Sistema Electrónico de Contrataciones Públicas PanamaCompra".

Una vez concluido el término señalado en la resolución de gabinete que declaró la emergencia, las entidades contratantes presentarán al Consejo de Gabinete un informe detallado de las contrataciones realizadas. Dicho informe será publicado en el Sistema Electrónico de Contrataciones Públicas "PanamaCompra", a más tardar a los cinco días hábiles siguientes a la presentación en el Consejo de Gabinete.

Si no se consumieron o utilizaron todos de los bienes adquiridos, los remanentes deberán ser puestos a disposición del Sistema Nacional de Protección Civil del Ministerio de Gobierno o de la Dirección de Asistencia Social del Ministerio de la Presidencia.

Las entidades deberán consultar la tienda virtual antes de acogerse a este procedimiento especial y verificar si los productos o servicios requeridos para atender la emergencia están o no incluidos en dicha tienda".

XXXIf goods are required that cannot be supplied through the local market, the entities are empowered to acquire them from non-national companies, although with the obligation of these to register a posteriori in the Registry of Bidders in the Electronic Public Procurement System "PanamaCompra".

Once the term indicated in the cabinet resolution that declared the emergency has ended, the contracting entities shall submit to the Cabinet Council a detailed report of the contracts made. This report will be published in the Electronic Public Procurement System "PanamaCompra", no later than five business days following the presentation to the Board of Cabinet.

If not all of the goods purchased were consumed or used, the remainder must be made available to the National Civil Protection System of the Ministry of Government or the Directorate of Social Assistance of the Ministry of Presidency.

Entities must consult the virtual store before availing themselves of this special procedure and verify whether the products or services required for attending to the emergency are or are not included in said store."

En concordancia con lo anterior, en la medida que la Resolución de Gabinete N°129 de 29 de diciembre de 2021 "declara concluido, a partir del 1 de enero de 2022, el término para la utilización del procedimiento especial de adquisiciones de bienes, servicios u obras decretado mediante la Resolución de Gabinete N°11 de 13 de marzo de 2020, que estableció el Estado de Emergencia Nacional", se fija igualmente la conclusión de este último, ya que no tiene existencia jurídica independiente del plazo y montos que autoriza como mecanismo de contratación pública diferenciado del resto de los procedimientos de selección de contratista regulares y excepcionales que desarrolla la mencionada Ley N°22 de 2006.

Llegada a su fin la Declaración de Emergencia Nacional, se agota la condición que, según lo señala su artículo 6, concedía vigencia al Decreto Ejecutivo N°99 de 15 de febrero de 2021, situación que impide efectuar un posible control sobre su constitucionalidad puesto que la presente, no es una instancia didáctica, sino la más importante dentro del Estado de Derecho porque cumple un cometido concreto sobre la normatividad de la Nación para preservar la supremacía de la Constitución Política, lo cual determina que debe incidir en disposiciones jurídicas en vigor, porque son éstas y no las pasadas, las que deben sujeción a sus principios y contenidos.

In accordance with the above, to the extent that the Cabinet Resolution No. 129 of the 29th of December, 2021 'declares concluded, on the 1st of January 2022, the term the use of the special procedure for the acquisitions of goods, services, or works decreed by means of Cabinet Resolution No. 11 of the 13th of March, 2020, which established the State of National Emergency', likewise the end of the former is established given that it has no juridical effect independent of the term and sums it authorizes as a mechanism for public contracting differentiated from the rest of the procedures of the selection of regular and exceptional contractors as defined by the aforementioned Law No. 22 of 2006.

Having arrived at its end the Declaration of National Emergency exhausted the condition which, as indicated by its own article 6, it conceded effect to Executive Order No. 99 of the 15th of February, 2021, a circumstance which impedes undertaking possible control over its constitutionality given that this circumstance is not an theoretical instance, but rather the most important within the Rule of Law because it fulfills a concrete role vis-à-vis the laws of the Nation in order to preserve the supremacy of the Constitution, which determines that it must have a bearing on the juridical dispositions in effect, because it is these and not the previous ones which owe fealty to their principles and contents.

En virtud de lo anterior, lo que corresponde es no admitir esta causa, y a ello se procede.

## PARTE RESOLUTIVA

En mérito de lo expuesto, el Pleno de la Corte Suprema de Justicia, administrando justicia en nombre de la República y por autoridad de la Ley, NO ADMITE la Acción de Inconstitucionalidad interpuesta por la licenciada Jeacqueline Probst Selles, contra el Decreto Ejecutivo N°99 de 15 de febrero de 2021.

**FUNDAMENTO DE DERECHO**: Artículo 206 de la Constitución Política y Artículos 101, 665, 2559, 2560 y 2561 del Código Judicial.

Notifíquese,


**MARIBEL CORNEJO BATISTA**

**MARIA EUGENIA LOPEZ ARIAS**

**CARLOS ALBERTO VASQUEZ REYES**

**JOSE E. AYU PRADO CANALS**

**ANGELA RUSSO DE CEDENO**

**OLVEDO ARROCHA OSORIO**

**CECILIO CEDALISE RIQUELME**

**MARIA CRISTINA CHEN STANZIOLA**

**MIRIAM CHENG ROSAS**

**YANIXZA Y. YUEN C. (Secretaria General)**

By virtue of the above, what corresponds is refuse this suit, and is thus carried out.

## Court Ruling

Based on the above, the Full Body of the Supreme Court, administering justice in the name of the Republic of Panama and under the authority of the Law, DOES NOT ADMIT the Claim of Unconstitutionality brought by Jeacqueline Probst Selles, attorney at law, against Executive Order No. 99 of the 15th of February, 2021.

**Legal Basis**: Article 206 of the Constitution and Articles 101, 665, 2559, 2560 and 2561 of the Judicial Code.

Be it so ordered.


**MARIBEL CORNEJO BATISTA**

**MARIA EUGENIA LOPEZ ARIAS**

**CARLOS ALBERTO VASQUEZ REYES**

**JOSE E. AYU PRADO CANALS**

**ANGELA RUSSO DE CEDENO**

**OLVEDO ARROCHA OSORIO**

**CECILIO CEDALISE RIQUELME**

**MARIA CRISTINA CHEN STANZIOLA**

**MIRIAM CHENG ROSAS**

**YANIXZA Y. YUEN C. (Secretary General)**

Entrada No. 70769-2022
Magda. Ponente Maribel Cornejo Batista

### VOTO RAZONADO
### MAGISTRADO OLMEDO ARROCHA O.

Respetuosamente, debo manifestar que, comparto la decisión contenida en el presente Fallo, mediante el cual se decide no admitir la demanda de inconstitucionalidad interpuesta por la licenciada Jeacqueline Probst Selles en contra del Decreto Ejecutivo No. 99 de 15 de febrero de 2021, emitido por el Ministerio de Salud, toda vez que, efectivamente, no cumple con el requisito indispensable para la admisión de esta clase de demandas; siendo este, el numeral 2 del artículo 2560 del Código Judicial

Sin embargo, debo manifestar que discrepo de algunos aspectos señalados en la parte motiva del mismo, en el sentido que a continuación se expondrán

A partir del último párrafo de la foja 4 del Fallo, se desarrolla una motivación que, considera el suscrito, desarrolla aspectos atinentes al fondo de la controversia. Sin embargo, al haberse entrado a analizar ese de la aspecto, que consiste en determinar el desarrollo acerca insubsistencia de las normas demandadas que, de acuerdo al contenido del Fallo, puso término la Resolución de Gabinete No. 129 de 29 de diciembre de 2021; es decir que, la Resolución referida alcance a resolver el levantamiento del Estado de Emergencia Nacional, debo, respetuosamente, apartarme dicho criterio

Esto es porque, la Resolución de Gabinete

Respectfully, I must state that I share the decision contained in this Judgment, through which it is decided not to admit the claim of unconstitutionality filed by Jeacqueline Probst Selles against the Executive Decree No. 99 of February 15, 2021, issued by the Ministry of Health, since, effectively, it does not meet the essential requirement for the admission of this class of claims; being this, numeral 2 of article 2560 of the Judicial Code.

However, I must state that I disagree with some aspects indicated in the motivational part of the same, in the sense that they will be explained below.

From the last paragraph of page 4 of the Judgment, a motivation is developed that, the undersigned considers, develops aspects related to the merits of the controversy. However, having entered into the analysis of aspect, which consists of determining the development regarding the non-subsistence of the demanded norms that, according to the content of the Judgment, terminated Cabinet Resolution No. 129 of 29 December , 2021; that is to say that, the aforementioned Resolution reaches to resolve the lifting of the State of National Emergency, I must, respectfully, set aside said opinion.

This is because No. Resolution of No. 129 de 29 de diciembre de 2021

(artículo 1) si bien declara concluido el término para las contrataciones mediante procedimiento especial de adquisiciones para la ejecución de obras y adquisición de bienes y/o servicios que se requieran en función de lo dispuesto en el artículo 2 de la Resolución de Gabinete No. 11 de 13 de marzo de 2020; también se dispone en el artículo 3 de dicha Resolución de Gabinete lo siguiente: *"Artículo 3. Mantener* vigentes *las* medidas *extraordinarias* de *carácter social, económico* y *sanitario*, adoptadas *por* el *órgano Ejecutivo a consecuencia* de *la Pandemia de la* COVID-*19."*; por tanto, a mi juicio, no resulta viable afirmar que dicha resolución ha cesado el Estado de Emergencia Nacional de forma tácita, como lo ha referido el presente Fallo.

Las consideraciones aquí expuestas recogen un razonamiento contrario a la parte motiva que he señalado, que es mi interés sea consignada al Fallo del cual versa cons[t]ituyendo el contenido de este VOTO RAZONADO

**Olmedo Arrocha Osorio
Magistrado**

**Licda. Yanixa Y. Yuen
Secretary General**

Cabinet 29 , December 2021 (article 1) although it declares the term for contracting through a special procurement procedure for the execution of works and acquisition of goods and/ or services that are required based on the provisions of article 2 of Cabinet Resolution No. 11 of 13, March 2020; also is provided in article 3 of the aforementioned Cabinet Resolution stating "**Article 3** *Maintain in* force *the extraordinary measures social, economic* and *health character*, adopted *by* the *Executive body as a result* of *the* COVID-19 Pandemic."therefore, in my opinion, it is not feasible to affirm that said resolution has tacitly ceased the National State of National Emergency, as referred to in this Judgment.

The considerations set forth here include a reasoning contrary to the motivating part that I have indicated, that it is my interest to be consigned to the Judgment to which it relates constituting the content of this REASONED VOTE

**Olmedo Arrocha Osorio
Justice**

**Licda. Yanixa Y. Yuen
Secretary General**

No. 28979-B                    Gaceta Oficial Digital, viernes 13 de marzo de 2020                    1

# República de Panamá

## CONSEJO DE GABINETE

### RESOLUCIÓN DE GABINETE N.°11
### de 13 de marzo de 2020

**Que declara el Estado de Emergencia Nacional y dicta otras disposiciones**

#### EL CONSEJO DE GABINETE,
en uso de sus facultades constitucionales y legales,

#### CONSIDERANDO:

Que en virtud de que en los últimos días, se han registrado varios casos de CoViD-19, enfermedad infecciosa causada a la población en general;

Que esta enfermedad infecciosa CoViD-19, causada por el coronavirus, puede incrementarse, amenazando tanto a los nacionales como a los extranjeros que se encuentren en el territorio de la República, así como a la economía nacional, generando alteraciones e interrupciones de las condiciones normales de funcionamiento u operación de las entidades del Estado, a causa de los eventos previamente descritos;

Que de acuerdo al artículo 79 del Texto Único de la Ley 22 de 2006, que regula la contratación pública, ordenado por la Ley 61 de 2017, es competencia del Consejo de Gabinete declarar emergencia, para los efectos que las entidades estatales puedan adquirir bienes, servicios u obras a través de un procedimiento especial;

Que la mencionada norma de la Ley de contrataciones públicas, exige que se establezca una suma total autorizada para las contrataciones especiales y el período dentro del cual estas contrataciones pueden realizarse;

Que se requiere tomar las providencias, a fin de suministrar los fondos y recursos necesarios, para afrontar y atenuar los efectos de esta pandemia declarada por la Organización Mundial de la Salud,

#### RESUELVE:

**Artículo 1.** Declarar el Estado de Emergencia Nacional, como consecuencia de los efectos generados por la enfermedad infecciosa CoViD-19, causada por el coronavirus, y la inminencia de la ocurrencia de nuevos daños, producto de las actuales condiciones de esta pandemia.

**Artículo 2.** Autorizar la contratación mediante el procedimiento especial de adquisiciones para la ejecución de las obras y adquisición de bienes y/o servicios que se requieran, a efectos de conjurar situaciones relacionadas con el Estado de Emergencia Nacional, declarado en el artículo 1 de la presente Resolución de Gabinete.

**Artículo 3.** Establecer que la suma total autorizada para las contrataciones especiales sea de cincuenta millones de balboas con 00/100 (B/.50,000,000.00), y que el período dentro del cual se puedan realizar, será de ciento ochenta (180) días calendario.

**Artículo 4.** Le corresponde al Ministerio de la Presidencia, administrar y autorizar los recursos, las partidas asignadas y los traslados de las mismas, de conformidad con la Ley que dicta el Presupuesto General del Estado, mientras dure el Estado de Emergencia Nacional de que trata la presente resolución.

**Artículo 5.** Autorizar al ministro de Economía y Finanzas, para que, en caso de ser requerido, solicite la dispensa ante la Asamblea Nacional, para la suspensión temporal de los límites financieros de que trata la Ley 34 de 2008, modificada por la Ley 102 de 2019.

**Artículo 6.** Autorizar al Ministerio de Gobierno, por conducto del Sistema Nacional de Protección Civil (SINAPROC), al Ministerio de Seguridad Pública y a los estamentos de seguridad correspondientes, para que coordinen todo lo relacionado con la aceptación y recibo de las contribuciones que efectúen organismos humanitarios nacionales e internacionales, que expresen su deseo de contribuir a la solución de los problemas que se confronten producto de la enfermedad infecciosa CoViD-19, causada por el coronavirus.

**Artículo 7.** Esta Resolución de Gabinete empezará a regir a partir de su aprobación.

**Fundamento de Derecho:** Constitución Política de la República de Panamá; Texto Único de la Ley 22 de 2006, que regula la contratación pública, ordenado por la Ley 61 de 2017; Ley 34 de 2008, modificada por la Ley 102 de 2019.

## COMUNÍQUESE Y CÚMPLASE.

Dada en la ciudad de Panamá, a los trece (13) días, del mes de marzo de dos mil veinte (2020).

**LAURENTINO CORTIZO COHEN**
Presidente de la República

La ministra de Gobierno,

**JANAINA TEWANEY MENCOMO**

La ministra de Educación,

**MARUJA GORDAY DE VILLALOBOS**

La ministra de Salud,

**ROSARIO TURNER MONTENEGRO**

El ministro de Comercio e Industrias,

**RAMÓN MARTÍNEZ**

El ministro de Desarrollo Agropecuario,

**AUGUSTO VALDERRAMA**

El ministro de Economía y Finanzas,

**HÉCTOR E. ALEXANDER H.**

El ministro para Asuntos del Canal,

**ARISTIDES ROYO**

El ministro de Relaciones Exteriores,

**ALEJANDRO FERRER**

El ministro de Obras Públicas,

**RAFAEL SABONGE VILAR**

La ministra de Trabajo y
Desarrollo Laboral,

**DORIS ZAPATA A.**

La ministra de Vivienda y
Ordenamiento Territorial,

**INÉS SAMUDIO DE GRACIA**

La ministra de Desarrollo Social,

**MARKOVA CONCENCIÓN**

El ministro de Seguridad Pública,

**JUAN MANUEL PINO F.**

El ministro de Ambiente,

**MILCIADES CONCEPCIÓN**

El ministro de Cultura,

**CARLOS AGUILAR NAVARRO**

**JOSÉ GABRIEL CARRIZO JAÉN**
ministro de la Presidencia y
secretario general del Consejo de Gabinete,

## REPÚBLICA DE PANAMÁ ÓRGANO JUDICIAL CORTE SUPREMA DE JUSTICIA - PLENO

Panamá, cinco (5) de agosto de dos mil veintidós (2022).

**VISTOS:**

En fase de admisibilidad, conoce el Pleno de la Corte Suprema de Justicia, la demanda de inconstitucionalidad presentada por la licenciada Jeacqueline Probst Selles, contra el Decreto Ejecutivo N°99 de 15 de febrero de 2021, por vulnerar los artículos 4, 17, 18, 49 y 109 de la Constitución Política.

## DISPOSICIÓN DEMANDADA DE INCONSTITUCIONAL

La norma jurídica objeto de la demanda es el Decreto Ejecutivo N°99 de 15 de febrero de 2021 que acoge las recomendaciones de la Organización Mundial de la Salud (OMS) para las vacunas contra el SARS-CoV-2, como mecanismo para facilitar su disponibilidad y uso en el territorio nacional y, además:

1.  Autoriza la importación de las vacunas contra la SARS-CoV-2 mientras dure la emergencia nacional declarada en virtud de la pandemia a que dio lugar.

## REPUBLIC OF PANAMA JUDICIAL SUPREME COURT

Panama, Fifth of August of two thousand twenty-two (2022).

**HAVING REVIEWED:**

In the admissibility stage, the Majority of the Supreme Court of Justice, considers the suit regarding a constitutional matter brought by Jeacqueline Probst Selles, attorney at law, against the Executive Order No. 99 from the 15th of February, 2021, alleged to have violated Articles 4, 17, 18, 49 and 109 of the Political Constitution.

## REQUESTED FINDING REGARDING CONSTITUTIONALITY

The juridical norm, object of this suit is the Executive Order No. 99 issued the 15th of February, 2021 which adopts/embraces the recommendations of the World Health Organization (WHO) for vaccinations against the SARS-CoV-2 virus, as a means of providing for its availability and use within the national borders, and in addition:

1.  It authorizes the importation of vaccines against SARS-CoV-2 as long as the national emergency lasts, declared in virtue of the pandemic which gave rise to it;

2.      Fija en la Dirección Nacional de Farmacias y Drogas del Ministerio de Salud la obligación de definir, mediante resoluciones, los requisitos de importación de las vacunas aludidas, las autorizaciones para su uso de emergencia y el procedimiento para su expedición;

3.      Recomienda a los profesionales de la salud las medidas de seguimiento y su nivel de rigurosidad en torno a la aplicación de las vacunas señaladas

4.      Deroga la Resolución N°002 de 7 de enero de 2021;

5.      Establece que su vigencia es a partir de su promulgación y;

6.      Determina que sus disposiciones sólo tendrán efecto mientras subsista la Declaración de Emergencia Nacional.

## CONSIDERACIONES Y DECISIÓN DEL PLENO

Con la finalidad de pronunciarse sobre la admisibilidad de la demanda de inconstitucionalidad que nos ocupa, el Pleno procede a verificar si cumple con las exigencias procesales contenidas en los artículos 101, 665, 2559, 2560 y 2561 del Código Judicial y los criterios jurisprudenciales que la Corte Suprema de Justicia tiene establecidos en la materia.

2. It establishes in the [Panamanian] National Drugs and Pharmacies Administration of the Health Ministry the obligation to define, through resolutions, the importation requirements of the abovementioned vaccines, the authorizations for their emergency use and the procedure for its expedition;

3.      It recommends to health professionals the tracking measures and their level of rigor regarding the application of the noted vaccines;

4. It repeals Resolution No. 0002 issued the 7th of January of 2021;

5. It establishes that it enters effect on the date of its issuance and;

6. It states that its provisions will remain in effect as long as the Declaration of National Emergency persists.

## CONSIDERATIONS AND DECISION OF THE COURT

With the intent of declaring on the admissibility/standing of the suit/case alleging constitutional violations before us, the [Pleno] Court [unanimously] proceeds in determining whether it fulfills the procedural requirements contained in Articles 101, 665, 2559, 2560, and 2561 of the Judicial Code and the jurisprudential criteria which the Supreme Court has established in these matters.

La demanda bajo examen está dirigida a la Presidenta de la Corte Suprema de Justicia, como lo exige el artículo 101 del Código Judicial y cumple con los requisitos formales comunes a todas las demandas en cuanto a la identificación de la demandante, el alcance de lo que pide que es la declaratoria de inconstitucionalidad del Decreto Ejecutivo N°99 de 15 de febrero de 2021 y la exposición de los hechos en que basa su pretensión.

En cuanto a los requisitos formales específicos de la demanda de inconstitucionalidad, percibe el Pleno que la accionante señaló el número y fecha de la Gaceta Oficial en que fue promulgado el Decreto Ejecutivo demandado, lo transcribió e hizo lo mismo con las de naturaleza constitucional que estima infringidas, cuestión a la que suceden una serie de explicaciones acerca del concepto de la infracción que, a criterio del Pleno, resultan ineficaces para estimar cumplido este requisito establecido en el apartado final del numeral 2 del artículo 2560 del Código Judicial.

Lo anterior es así, porque se centran en censurar, desde un punto de vista manifiestamente subjetivo, el acto normativo demandado en lugar de ofrecer razones argumentativamente inequívocas, delimitadas, pertinentes y suficientes acerca del posible conflicto de cada uno de sus artículos con las normas constitucionales a las que alude.

The suit/case/claim under review is addressed to the President of the Supreme Court, [Maria Eugenia Lopez Arias] as required by article 101 of the Judicial Code and fulfills the formal requirements common to all suits regarding the identification of the plaintiff, the scope of the petition which is a finding of the unconstitutionality of the Executive Order No. 99 issued on the 15th of February, 2021 as well as the disclosure of the facts which underlies the suit's claim.

As regards the formal requirements of the unconstitutionality claim, the Full Court notes that the claimant indicated the number and date of the Official Gazette in which the impugned Executive Order was promulgated, transcribed it and did likewise with those of constitutional nature the claimant considers to have been infringed, a matter to which a series of explanations follow concerning the conception of the infraction which, in the opinion of the Full Court, prove to be insufficient in fulfilling the requirement established in the final paragraph of section 2 of article 2560 of the Judicial Code.

Such is the finding because they [the explanations] are focused on censuring, from a manifestly subjective point of view, the defendant regulatory act instead of offering unequivocal, defined, pertinent and sufficient argumentation regarding the possible conflict with each one of its articles with the constitutional norms referenced.

Es decir, de cara a este tipo de acciones, los cargos de infracción deben ser explicados de forma que exterioricen plena armonía y cohesión que permitan su compresión; un contenido constatable en la norma y no elucubraciones, especulaciones o inferencias del proponente o a apartados verificables en otras disposiciones no demandadas; motivos no ambiguos, genéricos o inciertos, sino puntuales en cuanto a la supuesta contradicción entre las disposiciones de la Carta Magna que se dicen infringidas y el contenido normativo preciso impugnado; razones que sean de índole constitucional, no legal, doctrinaria o subjetivas del demandante acerca de la utilidad o los perjuicios derivados de su vigencia y que los argumentos alcancen un mínimo umbral persuasivo acerca de la necesidad de que esta Máxima Corporación de Justicia defina en el asunto traído a su conocimiento, si sobre el mismo debe operar una depuración que lo excluya del ordenamiento jurídico general.

Con esto en mente, es evidente que no se ofrecen motivos idóneos de cara al numeral 2 del artículo 2560 del Código Judicial, cuando en el concepto de la infracción de los artículos 4, 17, 18, 49 y 109 de la Carta Magna se emplean argumentos como los siguientes:

That is to say, in contemplating this kind of claim, the assertions of violations must be explained in such a way that they exhibit full harmony and coherence allowing for their compression; verifiable content in the norm and no elucubrations, speculations or inferences from the claimant or to verifiable paragraphs in other resolutions not under challenge; unambiguous, generic or vague motives, but rather specific ones regarding the supposed contradiction between the dispositions of the Constitution presumed to have been infringed and the specific impugned normative content; reasoning that are of a constitutional nature, not legal, doctrinaire or subjective ones from the plaintiff concerning the utility or harms deriving from its enforcement and that the arguments reach a minimum threshold of persuasion as to the need for this principal Judicial Entity to define in the matter brought before it, if regarding the same a remedy must operate which may exclude it from general juridical regulation.

With this mind, it is evident that suitable motives are not present in relation to section 2 of article 2560 of the Judicial Code, when, under the notion of an infraction of articles 4, 17, 18, 49 and 109 of the Constitution, arguments such as the following are employed:

1. Se incumple el artículo 4 constitucional ya que las vacunas pueden ocasionar muchísimos efectos adversos, incluso la muerte y el derecho a la vida se encuentra consagrado en la Convención Americana sobre Derechos Humanos;

2. Se viola el artículo 17 pues lejos de proteger la vida y el derecho a la salud de la población, la colocan en un estado de riesgo mayor con vacunas autorizadas por emergencia no justificada y carente de evidencia científica;

3. La violación al artículo 18 constitucional radica en que los artículos 2 y 3 del decreto ejecutivo fueron establecidos obviando el cumplimiento de múltiples normativas y leyes vigentes como se aprecia en los considerandos al citar la Ley N°66 de 1947, la Ley N°1 de 2001, la Ley N°109 de 2019, etc.;

4. Se incumple con el artículo 49 constitucional al autorizar la supuesta emergencia, en ningún momento justificada técnica y científicamente localmente, como se aprecia en la Resolución de Gabinete N°11 de 13 de marzo de 2020, unas vacunas contra el Covid-19, sin cumplir con el derecho a la información veraz de la población previsto en la Ley N°68 de 20 de noviembre de 2003.

1. Article 4 of the Constitution is breached given that the vaccines can cause many adverse effects, including death and the right to life as is established in the American Convention on Human Rights;

2. Article 17 is violated since far from protecting life and the population's right to health, it is placed at great risk with the vaccines authorized by an unjustified emergency, and lacking in scientific evidence;

3. The violation of Article 18 of the Constitution rests on the fact that articles 2 and 3 of the executive order were established skirting compliance with multiple norms and current laws as is apparent in the legal reasonings upon citing Law No 66 of 1947, Law No 1 of 109, Law 109 of 2019, etc.;

4. Article 49 of the Constitution is breached upon authorizing the alleged emergency, at no moment justified locally either technically or scientifically, as can be noted in Cabinet Resolution No. 11 on the 13th of March, 2020, some vaccines against Covid-19, without fulfilling the population's right to accurate information as provided in Law 68 of 20th of November, 2003;

5.   El contenido del artículo 2 del Decreto Ejecutivo N°99 de 2021 viola el artículo 109 de la Constitución Política porque es contrario a la función esencial del Estado de velar por la salud de la población y al derecho de protección y conservación de la misma que tiene todo individuo, tomando en consideración la completa desinformación por parte de la autoridad sanitaria en cuanto al incumplimiento del principio precautorio en salud pública, la inexistencia de registro sanitario de las vacunas y su carácter innecesario real frente a la existencia de tratamientos efectivos y menos riesgos contra la enfermedad.

Vistos los motivos que se ofrecen para provocar el examen constitucional del Decreto Ejecutivo N°99 de 15 de febrero de 2021, el Pleno llega a la conclusión que se trata de críticas o reproches a su contenido que no superan la subjetividad por parte de quien sostiene la convicción personal de que la regulación del procedimiento para la importación y requisitos para la posterior aplicación de las vacunas contra el SARS COV-2 en virtud de la pandemia a la que dio lugar, no fue la medida más adecuada por parte del órgano ejecutivo.

5.   The content of article 2 of the Executive Order No. 99 of 2021 violates article 109 of the Constitution because it is contrary to the essential function of the State to ensure the health of the population and to the right to protection and preservation of the same that every individual possesses, taking into consideration the complete disinformation on the part of the health authority regarding the violation of the precautionary principle in public health, the absence of a sanitary registry of the vaccines and their true unnecessary nature in the presence of effective and less risky treatments against the illness.

Having heard the reasons offered to instigate the constitutional review of the Executive Order No. 99 issued the 15th of February, 2021, the Court [Unanimously] concludes that [the suit] it deals with criticisms or reproaches of its [EO] content which do not overcome the subjectivity of the individual who holds the personal conviction that the regulation of the procedure for the importation and the requirements for the subsequent application of the vaccines against the SARS-CoV-2 virus in light of the pandemic which gave rise to it, was not the most appropriate measure on the part of the executive branch.

Así las cosas, los argumentos reseñados no son eficaces para relacionar la norma demandada con la violación a los artículos 4, 17, 18, 49 y 109 de la Carta Magna, lo cual, por sí solo, conduce a la inadmisión de la demanda presentada.

A ello se suma, no obstante, la insubsistencia de la norma jurídica que nos ocupa, cuyo artículo 6 prescribe de forma categórica que sus disposiciones "únicamente tendrán efecto mientras subsista la Declaración de Emergencia Nacional", a la cual implícitamente puso término la Resolución de Gabinete N°129 de 29 de diciembre de 2021 promulgada en la Gaceta Oficial N°29445-F de 30 de diciembre de 2021 "Que declara concluido el término para la utilización del procedimiento especial de adquisiciones de bienes, servicios u obras decretado mediante la Resolución de Gabinete N°11 de 13 de marzo de 2020, que estableció el Estado de Emergencias Nacional".

This being the case, the arguments outlined are not effective in relating the challenged norm with the violation of Articles 4, 17, 18, 49, and 109 of the Constitution, which, on its own, leads to the rejection/refusal of the claim/suit under review.

To wit, it is added, notwithstanding, the ineligibility of the juridical norm under consideration, whose article 6 proscribes categorically that its disposition "will solely have effect as long as the Declaration of National Emergency persists", to which the Cabinet Resolution No. 129 of the 29th of December 2021, published in the Official Gazette No. 29445-F on the 30th of December 2021, implicitly put an end, stating, "Whereas the term for the utilization of the special procedure of acquisition of goods, services or works decreed by means of Cabinet Resolution No. 11 of the 13th of March, 2020, which established the State of National Emergency is concluded".

En este sentido, la guarda de la integridad de la Constitución Política se lleva a cabo respecto a normas jurídicas que proyecten algún efecto en función de su vigencia, lo cual no ocurre cuando son expresamente derogadas, reemplazadas por otras o agotan el término preciso de eficacia jurídica señalado en ellas, supuesto este último en el que nos encontramos, puesto que el estado de emergencia al que estaba vinculado positivamente el Decreto Ejecutivo N°99 de 2021, concluyó el 1 de enero de 2022, según el artículo 1 de la mencionada Resolución de Gabinete N°129 de 29 de diciembre de 2021.

Esto es así, porque el estado de emergencia es un supuesto que sólo tiene existencia jurídica en función de la Ley N°22 de 27 de junio de 2006 (Que regula la contratación pública), para dar paso a un procedimiento especial de adquisición de bienes, servicios u obras públicas establecido en su artículo 85[1] durante el plazo y monto máximos fijados por el Consejo de Gabinete.

El concepto está contenido en el artículo 163.8 de la Constitución Política y se refiere a una de las prohibiciones a la Asamblea Nacional para permitir que, excepcionalmente, pueda "Ordenar o autorizar otras partidas y programas no previstos en el Presupuesto General del Estado". Por lo tanto, su contexto normativo es la contratación pública y conceptualmente se trata de un procedimiento especialmente expedito

de adquisiciones de emergencia a utilizarse hasta alcanzar en conjunto

In this sense, the protection of the Constitution's integrity is carried out with respect to the juridical norms that may cast some effect regarding its duration, which does not occur when they are expressly repealed, replaced by others, or exhaust the precise term of judicial force described in them, understood in the one we find ourselves in, given that the state of emergency, to which the <u>Executive Order No. 99 of 2021 was positively linked, concluded the 1st of January, 2022, according to article 1 of the aforementioned Cabinet Resolution No. 129 of the 29th of December, 2021.</u>

It is thus because the state of emergency is a scenario that only possesses juridical effect in function of Law No. 22 of the 27th of June, 2006 (which regulates the public contracting), in order to give way to a special procedure for the acquisition of goods, services or public works established in article 85[2] of said law during the term and for the maximum amount set by the Ministerial Cabinet.

The concept is contained in article 163.8 of the Constitution and refers to one of the prohibitions to the National Assembly in order to allow that, on exception, it may 'Order and authorize other allocations and programs unforeseen in the General Budget.' As such, its normative context is the public

---

[1] Que correspondía al número 79 de la ley No. 22 de 2006 vigente en marzo del año 2020.

[2] Which corresponded to number 79 of Law No. 22 of 2006 in force in March 2020.

contracting and conceptually it deals with a specially expedited procedure for emergency acquisitions to be used until reaching in total

la suma autorizada por el Consejo de Gabinete y dentro del plazo señalado por dicho cuerpo colegiado, tal como lo prescribe el aludido artículo 85 de la Ley N°22 de 2006. Veamos:

"Artículo 85. Procedimiento especial de adquisiciones de emergencia. Cuando el Consejo de Gabinete declare emergencia, las entidades estatales podrán contratar la adquisición de bienes, servicios u obras a través del procedimiento especial. La resolución de gabinete que declare el estado de emergencia y autorice la contratación mediante el procedimiento especial de adquisiciones deberá indicar la suma total autorizada para contrataciones especiales y el periodo dentro del cual esas contrataciones podrán hacerse.

El procedimiento especial de adquisiciones de emergencia podrá utilizarse hasta alcanzar en conjunto la suma autorizada y dentro del plazo señalado.

En los casos de emergencia en los que sea necesaria la adquisición de agua y alimentos destinados para el consumo inmediato, no se exigirá la presentación de fianzas; sin embargo, el contratista a través del contrato debe garantizar a la entidad contratante su obligación de responder por los vicios de los bienes adquiridos. Igualmente, el contrato

deberá establecer que el pago del contratista se hará con posterioridad a la ejecución del objeto del contrato.

the amount authorized by the Cabinet Resolution and within the term indicated by said deliberative body, as said article 85 of Law No. 22 of 206 prescribes. Let us consider:

"Article 85. Special emergency procurement procedure. When the Cabinet Council declares an emergency, state entities may contract the acquisition of goods, services, or works through the special procedure. The cabinet resolution declaring a state of emergency and authorizing the contracting through the special procurement procedure must indicate the total amount authorized for special contracts and the period within which these contracts may be made.

The special emergency procurement procedure may be used until reaching the authorized sum as a whole and within the indicated period.

In cases of emergency in which it is necessary to purchase water and food intended for immediate consumption, the presentation will not be required of sureties; however, the contractor through the contract must guarantee to the contracting entity its obligation to respond for the defects of the goods acquired. Likewise, the contract must establish that the contractor's payment will be done after the execution of the object of the contract.

Si se requirieran bienes que no puedan ser suministrados en el mercado local, las entidades quedan facultadas para adquirirlos a empresas no nacionales, aunque con la obligación de estas de registrarse a posteriori en el Registro de Proponentes del Sistema Electrónico de Contrataciones Públicas PanamaCompra".

Una vez concluido el término señalado en la resolución de gabinete que declaró la emergencia, las entidades contratantes presentarán al Consejo de Gabinete un informe detallado de las contrataciones realizadas. Dicho informe será publicado en el Sistema Electrónico de Contrataciones Públicas "PanamaCompra", a más tardar a los cinco días hábiles siguientes a la presentación en el Consejo de Gabinete.

Si no se consumieron o utilizaron todos de los bienes adquiridos, los remanentes deberán ser puestos a disposición del Sistema Nacional de Protección Civil del Ministerio de Gobierno o de la Dirección de Asistencia Social del Ministerio de la Presidencia.

Las entidades deberán consultar la tienda virtual antes de acogerse a este procedimiento especial y verificar si los productos o servicios requeridos para atender la emergencia están o no incluidos en dicha tienda".

XXXIf goods are required that cannot be supplied through the local market, the entities are empowered to acquire them from non-national companies, although with the obligation of these to register a posteriori in the Registry of Bidders in the Electronic Public Procurement System "PanamaCompra".

Once the term indicated in the cabinet resolution that declared the emergency has ended, the contracting entities shall submit to the Cabinet Council a detailed report of the contracts made. This report will be published in the Electronic Public Procurement System "PanamaCompra", no later than five business days following the presentation to the Board of Cabinet.

If not all of the goods purchased were consumed or used, the remainder must be made available to the National Civil Protection System of the Ministry of Government or the Directorate of Social Assistance of the Ministry of Presidency.

Entities must consult the virtual store before availing themselves of this special procedure and verify whether the products or services required for attending to the emergency are or are not included in said store."

En concordancia con lo anterior, en la medida que la Resolución de Gabinete N°129 de 29 de diciembre de 2021 "declara concluido, a partir del 1 de enero de 2022, el término para la utilización del procedimiento especial de adquisiciones de bienes, servicios u obras decretado mediante la Resolución de Gabinete N°11 de 13 de marzo de 2020, que estableció el Estado de Emergencia Nacional", se fija igualmente la conclusión de este último, ya que no tiene existencia jurídica independiente del plazo y montos que autoriza como mecanismo de contratación pública diferenciado del resto de los procedimientos de selección de contratista regulares y excepcionales que desarrolla la mencionada Ley N°22 de 2006.

Llegada a su fin la Declaración de Emergencia Nacional, se agota la condición que, según lo señala su artículo 6, concedía vigencia al Decreto Ejecutivo N°99 de 15 de febrero de 2021, situación que impide efectuar un posible control sobre su constitucionalidad puesto que la presente, no es una instancia didáctica, sino la más importante dentro del Estado de Derecho porque cumple un cometido concreto sobre la normatividad de la Nación para preservar la supremacía de la Constitución Política, lo cual determina que debe incidir en disposiciones jurídicas en vigor, porque son éstas y no las pasadas, las que deben sujeción a sus principios y contenidos.

In accordance with the above, to the extent that the Cabinet Resolution No. 129 of the 29th of December, 2021 'declares concluded, on the 1st of January 2022, the term the use of the special procedure for the acquisitions of goods, services, or works decreed by means of Cabinet Resolution No. 11 of the 13th of March, 2020, which established the State of National Emergency', likewise the end of the former is established given that it has no juridical effect independent of the term and sums it authorizes as a mechanism for public contracting differentiated from the rest of the procedures of the selection of regular and exceptional contractors as defined by the aforementioned Law No. 22 of 2006.

Having arrived at its end the Declaration of National Emergency exhausted the condition which, as indicated by its own article 6, it conceded effect to Executive Order No. 99 of the 15th of February, 2021, a circumstance which impedes undertaking possible control over its constitutionality given that this circumstance is not an theoretical instance, but rather the most important within the Rule of Law because it fulfills a concrete role vis-à-vis the laws of the Nation in order to preserve the supremacy of the Constitution, which determines that it must have a bearing on the juridical dispositions in effect, because it is these and not the previous ones which owe fealty to their principles and contents.

En virtud de lo anterior, lo que corresponde es no admitir esta causa, y a ello se procede.

By virtue of the above, what corresponds is refuse this suit, and is thus carried out.

**PARTE RESOLUTIVA**

**Court Ruling**

En mérito de lo expuesto, el Pleno de la Corte Suprema de Justicia, administrando justicia en nombre de la República y por autoridad de la Ley, NO ADMITE la Acción de Inconstitucionalidad interpuesta por la licenciada Jeacqueline Probst Selles, contra el Decreto Ejecutivo N°99 de 15 de febrero de 2021.

Based on the above, the Full Body of the Supreme Court, administering justice in the name of the Republic of Panama and under the authority of the Law, DOES NOT ADMIT the Claim of Unconstitutionality brought by Jeacqueline Probst Selles, attorney at law, against Executive Order No. 99 of the 15th of February, 2021.

**FUNDAMENTO DE DERECHO**: Artículo 206 de la Constitución Política y Artículos 101, 665, 2559, 2560 y 2561 del Código Judicial.

**Legal Basis**: Article 206 of the Constitution and Articles 101, 665, 2559, 2560 and 2561 of the Judicial Code.

Notifíquese,

Be it so ordered.

**MARIBEL CORNEJO BATISTA**

**MARIA EUGENIA LOPEZ ARIAS**

**CARLOS ALBERTO VASQUEZ REYES**

**JOSE E. AYU PRADO CANALS**

**ANGELA RUSSO DE CEDENO**

**OLVEDO ARROCHA OSORIO**

**CECILIO CEDALISE RIQUELME**

**MARIA CRISTINA CHEN STANZIOLA**

**MIRIAM CHENG ROSAS**

**YANIXZA Y. YUEN C. (Secretaria General)**

**MARIBEL CORNEJO BATISTA**

**MARIA EUGENIA LOPEZ ARIAS**

**CARLOS ALBERTO VASQUEZ REYES**

**JOSE E. AYU PRADO CANALS**

**ANGELA RUSSO DE CEDENO**

**OLVEDO ARROCHA OSORIO**

**CECILIO CEDALISE RIQUELME**

**MARIA CRISTINA CHEN STANZIOLA**

**MIRIAM CHENG ROSAS**

**YANIXZA Y. YUEN C. (Secretary General)**

Entrada No. 70769-2022
Magda. Ponente Maribel Cornejo Batista

**VOTO RAZONADO**
**MAGISTRADO OLMEDO ARROCHA O.**

Respetuosamente, debo manifestar que, comparto la decisión contenida en el presente Fallo, mediante el cual se decide no admitir la demanda de inconstitucionalidad interpuesta por la licenciada Jeacqueline Probst Selles en contra del Decreto Ejecutivo No. 99 de 15 de febrero de 2021, emitido por el Ministerio de Salud, toda vez que, efectivamente, no cumple con el requisito indispensable para la admisión de esta clase de demandas; siendo este, el numeral 2 del artículo 2560 del Código Judicial

Sin embargo, debo manifestar que discrepo de algunos aspectos señalados en la parte motiva del mismo, en el sentido que a continuación se expondrán

A partir del último párrafo de la foja 4 del Fallo, se desarrolla una motivación que, considera el suscrito, desarrolla aspectos atinentes al fondo de la controversia. Sin embargo, al haberse entrado a analizar ese de la aspecto, que consiste en determinar el desarrollo acerca insubsistencia de las normas demandadas que, de acuerdo al contenido del Fallo, puso término la Resolución de Gabinete No. 129 de 29 de diciembre de 2021; es decir que, la Resolución referida alcance a resolver el levantamiento del Estado de Emergencia Nacional, debo, respetuosamente, apartarme dicho criterio

Esto es porque, la Resolución de Gabinete

Respectfully, I must state that I share the decision contained in this Judgment, through which it is decided not to admit the claim of unconstitutionality filed by Jeacqueline Probst Selles against the Executive Decree No. 99 of February 15, 2021, issued by the Ministry of Health, since, effectively, it does not meet the essential requirement for the admission of this class of claims; being this, numeral 2 of article 2560 of the Judicial Code.

However, I must state that I disagree with some aspects indicated in the motivational part of the same, in the sense that they will be explained below.

From the last paragraph of page 4 of the Judgment, a motivation is developed that, the undersigned considers, develops aspects related to the merits of the controversy. However, having entered into the analysis of aspect, which consists of determining the development regarding the non-subsistence of the demanded norms that, according to the content of the Judgment, terminated Cabinet Resolution No. 129 of 29 December , 2021; that is to say that, the aforementioned Resolution reaches to resolve the lifting of the State of National Emergency, I must, respectfully, set aside said opinion.

This is because No. Resolution of No. 129 de 29 de diciembre de 2021

(artículo 1) si bien declara concluido el término para las contrataciones mediante procedimiento especial de adquisiciones para la ejecución de obras y adquisición de bienes y/o servicios que se requieran en función de lo dispuesto en el artículo 2 de la Resolución de Gabinete No. 11 de 13 de marzo de 2020; también se dispone en el artículo 3 de dicha Resolución de Gabinete lo siguiente: *"Artículo 3. Mantener* vigentes *las* medidas *extraordinarias* de *carácter social, económico y sanitario*, adoptadas *por* el *órgano Ejecutivo a consecuencia* de *la Pandemia de la* COVID-19*.*"; por tanto, a mi juicio, no resulta viable afirmar que dicha resolución ha cesado el Estado de Emergencia Nacional de forma tácita, como lo ha referido el presente Fallo.

Las consideraciones aquí expuestas recogen un razonamiento contrario a la parte motiva que he señalado, que es mi interés sea consignada al Fallo del cual versa cons[t]ituyendo el contenido de este VOTO RAZONADO

**Olmedo Arrocha Osorio**
**Magistrado**

**Licda. Yanixa Y. Yuen**
**Secretary General**

Cabinet 29 , December 2021 (article 1) although it declares the term for contracting through a special procurement procedure for the execution of works and acquisition of goods and/ or services that are required based on the provisions of article 2 of Cabinet Resolution No. 11 of 13, March 2020; also is provided in article 3 of the aforementioned Cabinet Resolution stating "**Article 3** *Maintain in* force *the extraordinary measures social, economic* and *health character*, adopted *by* the *Executive body as a result* of *the* COVID-19 Pandemic."therefore, in my opinion, it is not feasible to affirm that said resolution has tacitly ceased the National State of National Emergency, as referred to in this Judgment.

The considerations set forth here include a reasoning contrary to the motivating part that I have indicated, that it is my interest to be consigned to the Judgment to which it relates constituting the content of this REASONED VOTE

**Olmedo Arrocha Osorio**
**Justice**

**Licda. Yanixa Y. Yuen**
**Secretary General**

**EDICTO N°1205**

La suscrita Secretaria General de la Corte Suprema de Justicia, en uso de sus facultades legales, hace saber que: En la Acción de Hábeas Data presentada por la licenciada Olga Cecilia De Obaldía, actuando en representación de la **FUNDACIÓN PARA EL DESARROLLO DE LA LIBERTAD CIUDADANA**, contra el **MINISTERIO DE SALUD**, se ha dictado una Resolución cuya parte resolutiva es del tenor siguiente:

*"CORTE SUPREMA DE JUSTICIA. PLENO. Panamá, doce (12) de agosto de dos mil veintiuno (2021)*

*VISTOS:...........................................................................................*

*En mérito de lo antes expuesto, el **PLENO DE LA CORTE SUPREMA DE JUSTICIA**, administrando justicia en nombre de la República y por autoridad de la Ley, **CONCEDE PARCIALMENTE** la Acción de habeas data presentada por la Licenciada OLGA CECILIA DE OBALDÍA, en representación de la **FUNDACIÓN PARA EL DESARROLLO DE LA LIBERTAD CIUDADANA**, en contra del Ministro de Salud. En consecuencia, **ORDENA** al funcionario demandado que, en el término de cinco (5) días siguientes a la notificación de la presente resolución, conteste de manera escrita a la accionante, su solicitud de información, con expresión de las razones fácticas y jurídicas que sustenten la imposibilidad de suministrar la información de carácter restringido requerida y que entregue la información de acceso público que se detalla:*

*1. Empresa, Estado y/o Instituciones, con las que se han gestionado las adquisiciones.*

*2. Organismos nacionales y/o internacionales que hayan participado en las gestiones de adquisición.*

*3. Nombre de la(s) principal(es) persona(s) responsable(s), ya sean servidores públicos o personas privadas, de representar los intereses del Estado Panameño en cada negociación con cada empresa, estado o institución.*

*4. Institución o dependencia del Estado, renglón presupuestario y partida de donde se erogaron o se erogarán los fondos para la adquisición de dosis de vacunas o tratamiento contra la COVID19.*

*5. Rendición de cuentas de los fondos utilizados para dicha(s) adquisición(es): orden de pago, refrendo, publicación. Copia de los cheques o transferencias bancarias de pago, ya sea en formato impreso o digital y su correspondiente documentación de refrendo.*

*6. Institución o dependencia del Estado, renglón presupuestario y partida de donde se erogaron o se erogarán fondos para la adquisición de los equipos e insumos necesarios para el almacenamiento, distribución y aplicación de las dosis de vacunas, incluyendo congeladores de ultra baja temperatura, cuartos fríos, jeringas y agujas hipodérmicas, transportes refrigerados y cualesquiera otros pertinentes.*

*7. Rendición de cuentas de los fondos utilizados para la adquisición de los insumos referidos en el párrafo 2.c arriba: orden de pago, refrendo, publicación. Copia de los cheques o transferencias bancarias de pago, ya sea en formato impreso o digital y su correspondiente documentación de refrendo.*

*8. Publicación del orden de vacunación y grupos prioritarios.*

***FUNDAMENTO DE DERECHO:** Artículos 42,43 y 44 de la Constitución Política de Panamá. Artículos 1,7,8,10,14,16 y 17 de la Ley 6 de 22 de enero de 2002. Artículo 13 de la Convención Americana sobre derechos Humanos. Artículo 83 de la Ley 35 de 10 de mayo de 1996.*

***NOTIFÍQUESE,***

*(FDO) MGDA.  MARIBEL CORNEJO BATISTA*
*(FDO) MGDO.  SECUNDINO MENDIETA*
*(FDO) MGDO.  EFRÉN C. TELLO C.*
*(FDO) MGDA.  MARÍA EUGENIA LÓPEZ ARIAS*
*(FDO) MGDA.  CARMEN LUZ DE GRACIA*
*(FDO) MGDO.  CARLOS ALBERTO VÁSQUEZ REYES*
*(FDO) MGDO.  OLMEDO ARROCHA OSORIO (CON VOTO RAZONADO)*
*(FDO) MGDO.  JOSÉ E. AYÚ PRADO CANALS (CON SALVAMENTO DE VOTO)*
*(FDO) MGDO.  CECILIO CEDALISE RIQUELME*
*(FDO) LICDA.  YANIXSA Y. YUEN, Secretaria General"*

Para notificar a los interesados lo anterior, fijo el presente Edicto en lugar visible de la Secretaría General de la Corte Suprema de Justicia, hoy cinco (5) de octubre de dos mil veintiuno (2021), a las diez (10:00) de la mañana.

**LICDA. YANIXSA Y. YUEN.**
Secretaria General

N° de Negocio: 335362021.

**VÍCTOR H. RODRÍGUEZ**
OFICIAL MAYOR IV
CORTE SUPREMA DE JUSTICIA

**EDICT No. 1205**

The undersigned Secretary General of the Supreme Court of Justice, in use of her powers legal, makes known that: In the Action Habeas Data filed by the Olga Cecilia De Obaldía, acting on behalf of FUNDACIÓN PARA EL DESARROLLO DE LA LIBERTAD CIUDADANA (FOUNDATION FOR THE DEVELOPMENT OF CITIZEN'S FREEDOM), __against the MINISTRY OF HEALTH, has been issued Resolution whose part operative reads is of the follows

*"PLENARY OF THE COURT SUPREME OF JUSTICE, Panama, twelve (12) of August, and two thousand as two one twenty (2021)*

SEEN:

In merit of the before mentioned, The PLENARY OF THE SUPREME COURT of JUSTICE foregoing, administering justice on behalf of the Republic and by authority of the the Law, PARTIALLY GRANTS the action habeas data filed by the Attorney OLGA CECILIA DE OBALDIA, on behalf of **FOUNDATION FOR THE _DEVELOPMENT OF CITIZEN'S FREEDOM,** against the Minister of Health. As a result, it **ORDERS** that the official sued, respondent, that within the term of five (5) days following this notification and this resolution, to reply in writing to the request of plaintiff and her request for information, expressing the tacit and factual legal reasons that support the inability to provide the information that is of restricted in nature and to deliver the information of public access detailed:

1. Company, State and or Institutions, with which have been managed and coordinate the acquisitions.
2. Organizations National and/or international that have participated in the acquisitions efforts..
3. Name of the principle person(s) responsible(s) whether public servants or private parties or persons, representing the interests of the Panamanian State in the each negotiation each company, state or institution.
4. Institution or dependency State, line budget and item from which COVID-19 that will disbursed the funds for the acquisition of doses of vaccines treatment be were against COVID-19.
5. Rendering of accounts of the funds used for said(s) acquisition(s): order of payment, referendum utilized, publication payment. Copies of the checksbank or transfers payment printed of, either digital in format or, and their corresponding documentation endorsement.
6. Institution or dependency of Statebudgetand, line item from which funds or will

disbursed for the acquisition equipment and of supplies and necessary before storage, distribution were the licitation of vaccine doses, including freezers, ultra low temperature, rooms cold syringes hypodermic needles and refrigerated, and transport. any other pertinent.

7. Rendering of accounts of the funds used for the acquisition of the supplies referred in paragraph 2..c above: order of payment, endorsement, publication. Copies of checks or bank transfers payments, printed or digital and whether in format digital or printed and their endorsement documentation corresponding to the payment.

8. Publication of order the vaccination and groups priority.

**BASIS OF LAW**: Articles 42, 43, and 44 of the Political Constitution of Panama. Articles 1, 7, 8, 10, 14, 16, and 17 of Law 6 of January 22, 2002. Article 13 of the American Convention on Human Rights. Article 83 of Law 35 of May 10, 1996.
BE NOTIFIED,
(SIGNED) MGDA. MARIBEL CORNEJO BATISTA
(SIGNED) MGDO. SECUNDINO MENDIETA
(SIGNED) MGDO. EFRÉN C. TELLO C.
(SIGNED) MARIA EUGENIA LÓPEZ ARIAS
(SIGNED0 (MGDA) CARMEN LUZ DE GRACIA
(SIGNED) (MGDO) CARLOS ALBERTO VÁSQUEZ REYES
(SIGNED) MGDO. OLMEDO ARROCHA OSORIO (REASONED VOTE
(SIGNED) (MGDO) OSÉ E. AYÚ PRADO CANALS (WITH SALVAMENT OF VOTE)
(SIGNED) (MGDO) CECILIO CEDALISE RIQUELME
(SIGNED) ATTORNEY YANIXSA Y. YUEN, Secretary General"

To notify the interested parties, the foregoing is to be published in a visible place of the Secretary General of the Supreme Court of Justice, today October fifth (5), two thousand and twenty one (2021), at 10:00 A.M.
ATTY, YANIXSA Y.. YUEN
Secretary General
VICTOR H. RODRIGUEZ
OFFICIAL MAYOR IV (4th) of the SUPREME COURT OF JUSTICE
No. of business.: 335362021.

 Wolters Kluwer

**SOP Intake** Portal

**Date:** Tue, Oct 25, 2022

**Time:** 1:16 PM

**Name:** NY-NYC DROPOFFPROCESSSERVER

**Phone:** 212-111-2222

**Juris Served:** NY

**Job ID:** 209837

**Total Entries:** 1

Receipt of the following documents at the date, time and location indicated above.

| Entity Served | Agent Name | Case No. |
|---|---|---|
| PFIZER | | NONE |

Intake Specialist: Kartik Pandya

CT Corporation, a Wolters Kluwer Company

'ack ink all areas in bold letters.]

NEW YORK
COUNTY CLERK'S OFFICE

NOV 0 1 2022

NOT COMPARED
WITH COPY FILE

PRESENT: HON. _____

_____
Justice of the Supreme Court

At I.A.S. Part ____ of the Supreme Court of the State of New York, held in and for the County of New York, at the Courthouse thereof, 60 Centre Street, New York, N.Y., on the _1st_ day of _November_ , 20 _22_

-----------------------------------------x

In the Matter of the Application of

_Ana McCarthy,_

**[fill in name(s)]**        Petitioner(s),

- against -

_Pfizer,_

_____

_____

**[fill in name(s)]**        Respondent(s).

-----------------------------------------x

Index Number

_____

ORDER TO SHOW CAUSE
IN A SPECIAL PROCEEDING

_Emergency foreign
Judgment (Panama_

-----------------------------------------x Ana McCarthy, et al
Domesticating a Foreign

Upon reading and filing the Verified Petition of

_Judgment of the Sup Ct_ **[your name(s)]**, sworn to on _____ _November_ , 20 _22_

**[date Verified Petition notarized]**, and the exhibits attached to the Petition,

**[Identify Exhibits below.  List additional Exhibits on separate page.]**

Exhibit A _Panamanian Supreme Court Judgment and_
_certified legal Translations_

Exhibit B _License of Ana McCarthy and Translations_

Exhibit C _Applicable laws and decrees_

Let the respondent(s) show cause at I.A.S. Part _____, Room _____, of this Court, to be held at the Courthouse, 60 Centre Street, New York, N.Y., on the _____ day of _____, 20 _22_, at _____ o'clock in the _____ noon or as soon as the parties to this proceeding may be heard why a judgment should not be issued providing the following relief

**[briefly describe the relief you seek from the Court]**

_See attached Emergency Motion_

and such other and further relief as may to the court seem just and proper, for the reasons that [briefly

**describe the reasons why you should be granted what you are requesting]:**

The Republic of Panama is a foreign soveign nation. On December 29, 2022, the President of the Republic of Panama ended the State of Emergency that granted (Pfizer, a US corporation based in N.Y.) Pfizer, et al, the administration of Covid 19 Vaccines. In simple terms that equates to the FDA recalling a product. Pfizer was served on Oct. 25, 2022 the Panamanian Supreme Court Order and it is presently in Contempt of Court as it has refused to recall the Vacan

Sufficient cause appearing therefor, let personal service of a copy of this order, the Petition

and all other papers upon which this order is granted, upon all parties to this proceeding, on or before

the _____ day of _____, 20___ be deemed good and sufficient. An affidavit or

acknowledgment of service shall be presented to this Court on the return date fixed above.

ENTER

_____

J. S. C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

In the Matter of the Application of

_Ana McCarthy,_

**[fill in name(s)]**                    Petitioner(s),

- against -

_Pfizer,_

**[fill in name(s)]**                    Respondent(s).

-------------------------------------------------------------------x

Index Number

_____

VERIFIED PETITION

TO THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK:

The petition of **[your name]** _Ana McCarthy_ respectfully

shows to this court as follows:

   1. Petitioner resides at **[your address]** _209 Spencer St. Apt 2C_
_Brooklyn NY 11205_

   2. The respondent(s) is / are **[identify the respondent(s)]** _Pfizer, 245 E._
_42nd St. New York, NY 10017 (212) 733 2323_

   3. **[Describe what you are requesting and the reasons therefor.  Add more pages if needed.  If you are appealing the decision of a government agency, give the date and outcome of the final determination.  Explain why this Court should reverse that decision.]**

_Because Pfizer is a domestic United Corporation_
_based in New York City and Jurisdiction_
_Falls within the City of New York._

4. Attached as exhibits are copies of all relevant documents. [Attach the decision you are asking the court to reverse as Exhibit A.  Attach any other documents as Exhibit B, Exhibit C, and so on.  Identify each exhibit and explain how it supports your position.  List additional Exhibits on a separate page.]

Exhibit A - _Panama Supreme Court Order translated_

Exhibit B - _Laws applicable to the Order_

Exhibit C - _License translated under Hague laws_

Exhibit D - _____

Exhibit E - _____

5. A prior application *has not* / *has* [circle one] been made for the relief now requested. [If you made this application before in this or any other court, describe where, when, the result and why you are making it again.] _____

_____

_____

_____

WHEREFORE, your deponent respectfully requests that this Court [briefly describe what you are requesting] *To Domesticate the Foreign Judgement of the Panamanian Supreme Court then serve Pfizer the Order. Avoid State to State issues that Pfizer is in contempt of the laws & a foreign sovereign nation*

and grant such other and further relief as may to the court seem just and proper.

_1st November_, 20 _22_
**[date signed]**

_Ana McCarthy_
Petitioner [sign your name]

_Ana McCarthy_
**[print your name]**

_For se_

_____
_____
**[your address and telephone no.]**

VERIFICATION

STATE OF NEW YORK
COUNTY OF _New York_ : ss:

_Ana McCarthy_ **[your name]**, being duly sworn, deposes and says that: I am the petitioner in this proceeding; I have read the foregoing petition and know the contents thereof; the same are true to my own knowledge, except as to matters therein stated to be alleged on information and belief; and as to those matters I believe them to be true.

Sworn to before me this

NOV 0 1 2022

_____ day of _____, 20__

_Ana McCarthy_
Petitioner

**[sign your name before a Notary]**

_Alice J. McPherson_
Notary Public

Alice J. McPherson
Notary Public, State of New York
Reg. No. 03MC6423676
Qualified in New York County
Commission Expires October 18, 20__

_Ana McCarthy_
**[print your name]**

3

**ARTÍCULO 55.** En caso de guerra exterior o de perturbación interna que amenace la paz y el orden público, se podrá declarar en estado de urgencia toda la República o parte de ella y suspender temporalmente, de modo parcial o total, los efectos de los artículos 21, 22, 23, 26, 27, 29, 37, 38 y 47 de la Constitución.

El Estado de urgencia y la suspensión de los efectos de las normas constitucionales citadas serán declarados por el Órgano Ejecutivo mediante decreto acordado en Consejo de Gabinete. El Órgano Legislativo, por derecho propio o a instancia del Presidente de la República, deberá conocer de la declaratoria del estado referido si el mismo se prolonga por más de diez días y confirmar o revocar, total o parcialmente, las decisiones adoptadas por el Consejo de Gabinete, relacionadas con el estado de urgencia Al cesar la causa que haya motivado la declaratoria del estado de urgencia, el Órgano Legislativo, si estuviese reunido, o, si no lo estuviera, el Consejo de Gabinete levantará el estado de urgencia.

## CITATIONS OF LAW OF THE REPUBLIC OF PANAMA

1.  Resolución de Gabinete No. 11 of Marzo 13, 2020.
2.  **Decreto Ejecutivo N° 99 (De lunes 15 de febrero de 2021) PRIORIDAD**
    Enlace: https://www.gacetaoficial.gob.pa/pdfTemp/29219_B/
    GacetaNo_29219b_20210215.pdf
3.  Decreto Ejecutivo No. 64 of January 28, 2020.
4.  Texto Único de la Ley 22 of 2006 ordenado por la Ley 61 of 2017 (incluya la ley
    regulaba la contratación pública)
5.  Decreto Ejecutivo No. 400 - Marzo 27, 2020 creó el Plan Solidario
6.  Artículo 138 de la Ley 66 de 1947
7.  Resolución de Gabinete N.°18 de 2020.
8.  Resolución de Gabinete N.° 33 de 2020
9.  Resolución de Gabinete N.° 38 de 2020.
10. Resolución de Gabinete N.° 45 de 2020.
11. Resolución de Gabinete N.° 48 de 2020.
12. Resolución de Gabinete N.° 49 de 2020.
13. Resolución de Gabinete N.° 52 de 2020.
14. Resolución de Gabinete N.° 54 de 2020.
15. Resolución de Gabinete N.° 65 de 2020.
16. Resolución de Gabinete N.° 76 de 2020.
17. Resolución de Gabinete N.° 2 de 2021.
18. Resolución de Gabinete N.° 3 de 2021.
19. Resolución de Gabinete N.° 54 de 2021
20. Resolución de Gabinete N.° 76 de 2021.
21. Artículo 109 de La Constitución Política de la República de Panamá
22. Ley 66 de 10 de noviembre de 1947 (Aprueba el Código Sanitario de Panamá)
23. Artículo 153 (nombrado el el Decreto Ejecutivo No. 99)
24. Artículo 79 la Ley 1 de 10 de enero de 2001
25. Comunicado de Prensa del 31 de diciembre de 2020 (OMS)
26. Documento de ISBN DE HSS/MT.COVID-19/20-0006 del 27 de abril de 2020
    (Utilización de decisiones de otras autoridades reguladora para autorizar el uso de
    emergencia de medicamentos y otras tecnologías sanitarias en un pandemia...)
27. Ley 1 de 10 de enero de 2001- modificada por la Ley 97 de 4 de octubre 2019
28. Ley 109 de 12 de noviembre de 2019 - numeral 3 de su Artículo 2
29. Decreto de Gabinete No. 1 de 15 de enero de 1969

2

## Citaciones en el Fallo de la Corte Suprema de Justicia

1. Decreto Ejecutivo No. 99 de 15 de Febrero de 2021
2. Constitución Política Artículo 4
3. Constitución Política Artículo 17
4. Constitución Política Artículo 18
5. Constitución Política Artículo 49
6. Constitución Política Artículo 109
7. Constitución Política Artículo 206
8. Artículo 6 - (Insubsistencia de la norma)
9. Resolución No. 002 de 7 de enero de 2021
10. Resolución de Gabinete No. 129 - 29 de diciembre 2021 - Gaceta Official No. 29445-F
11. Código Judicial Artículo 101
12. Código Judicial Artículo 665
13. Código Judicial Artículo 2559
14. Código Judicial Artículo 2560
15. Código Judicial Artículo 2561
16. Código Judicial Artículo 2560 Numeral 2
17. Ley No. 66 de 1947
18. Ley No. 1 de 2001
19. Ley No. 109 de 2019
20. Ley No. 22 de 2006
21. Ley No. 22 de 27 de junio de 2006 (Regulación de Contrataciones Públicas)
22. Artículo No. 85 de la Ley No. 22
23. Resolución de Gabinete No. 11 de 13 de marzo de 2020 - Estado de Emergencia